IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| LORTERDAN PROPERTIES AT RAMAPO I, L.L.C., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) 11 Civ. 3656 (CS)<br>) |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., | )<br>)<br>) |
| Defendant. | )<br>) |

**AFFIDAVIT OF JOHN O. MILLER, III IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF WATCHTOWER'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS, AND IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT IN FAVOR OF WATCHTOWER**

STATE OF TEXAS        )

COUNTY OF TRAVIS   )

JOHN O. MILLER, III, being duly sworn, deposes and states under oath the following:

1. I am familiar with the facts and circumstances of this action and I make this Affidavit from my own personal knowledge.

2. At all times relevant to this action, I was and am an Associate General Counsel in the Legal Department of the Watchtower Bible and Tract Society of New York, Inc. (hereinafter "Watchtower").

3. At the time of the February 27, 2009, closing of its purchase from Lorterdan Properties at Ramapo I L.L.C. (hereinafter "Lorterdan") of the 249 acres of real estate that is the subject of this lawsuit (hereinafter the "property"), Watchtower, a not-for-profit religious

1
Affidavit of John O. Miller

corporation, had the intent to develop the property as a complex of offices, residences, and ancillary uses similar to Watchtower's facilities at Patterson and Wallkill, New York (hereafter the "Development") for its religious use and purposes, which intent entitled Watchtower to a real estate tax exemption under New York State Real Property Tax Law Section 420 for the tax year 2009/2010. Under New York law, Watchtower would have to file an application for tax exemption each year and satisfy the Town that it either was using or still intended to use the property for its religious purposes. This requirement is in recognition of the fact that, like that of any other exempt property owner, Watchtower's use or intended use could potentially change from year to year.

4. On February 27, 2009, the same day as the closing, Watchtower filed an application for tax exemption for the property for the tax year 2009/2010. (J. Ex. 5 to Jackson affidavit)

5. The application form requested "intended uses" and "contemplated improvements" for the Property. Watchtower described its intended religious uses.

6. The tax exemption application for the tax year 2009/2010 was denied by the Town on May 1, 2009 (J. Ex. 17 to Jackson affidavit, exhibit H thereto) and the grievance of that denial that was filed by Watchtower with the Town Board of Assessment Review (J. Ex. 17 to Jackson affidavit, exhibit J-1 thereto) was denied in June 2009 (J. Ex. 17 to Jackson affidavit, exhibit N thereto).

7. Following those denials, Watchtower filed a Petition in the Supreme Court, Rockland County, against the Town and its Board of Assessment Review (J. Ex. 17 to Jackson affidavit).

8. The Petition contained a description of the religious use for which the property was planned in furtherance of the religious purposes of Petitioner, expressing Watchtower's intent at the time. (J. Ex. 17, par. 14)

9. That litigation was eventually settled when Watchtower and the Town entered into a Stipulation (J. Ex. 23 to Jackson affidavit), which was adopted as an Order by the Court (J. Ex. 24 to Jackson affidavit).

10. Watchtower and the Town also entered into a Community Benefit Agreement (hereinafter "CBA") in settling that litigation (J. Ex. 19 to Jackson affidavit), and subsequently the property was declared by the Town to be tax exempt for the tax year 2009/2010.

11. The CBA specifically acknowledged that Watchtower, as a religious organization owning real property, would be entitled to tax exemption for the property in future years if initial land use approvals were obtained from the Town and "if Watchtower continues to pursue its intended use of the property in good faith." (J. Ex. 19 to Jackson affidavit, at p. 2)

12. Clearly, the tax exemption for the property was contingent on Watchtower continuing to intend to develop the property. In fact, the CBA required Watchtower to file for tax exemption each year so that the Town could re-examine whether Watchtower's use or intent to use had changed. (J. Ex. 19, par. 5)

13. If Watchtower's intent had changed in any given year, and if Watchtower no longer intended to develop the property for exempt religious purposes, then the property would lose its tax exempt status for that year and return to the Town's tax rolls. Watchtower's obligation to continue its community benefit donation to the Town would end when the property became taxable.

14. Since it was obvious that Watchtower's intent and plans for the property could change, the CBA also provided that the community benefit donation for any given tax year would be reduced by the amount of any taxes paid by Watchtower. (J. Ex. 19, par. 2)

15. Since Watchtower still intended to develop the property, on February 25, 2010, Watchtower applied for tax-exempt status for the property for the tax year 2010/2011 (J. Ex. 25). That application was granted on May 1, 2010. (J. Ex. 26)

16. During October, 2010, Watchtower decided not to proceed with the Development.

17. By letter dated November 1, 2010, Watchtower notified Lorterdan that Watchtower had determined not to proceed with the Development and that Lorterdan was contractually required to repurchase the property. (J. Ex. 4)

18. Since the deadline for filing for tax exemption for the property was approaching and Lorterdan had still not repurchased the property from Watchtower, Watchtower filed for tax exemption for the tax year 2011/2012 on February 25, 2011. (J. Ex. 27)

19. In its application for tax exemption for the year 2011/2012, Watchtower disclosed to the Town that it had "suspended its plans to develop the property." (J. Ex. 27, pars 2f and explanation on page 2) Thus, the Town was alerted that Watchtower's intent to develop the property had changed.

20. Watchtower's application for tax exemption for the tax year 2011/2012 was denied by the Town on April 20, 2011.

WHEREFORE, it is respectfully requested that this Court deny the motion for summary judgment by Lorterdan in its entirety and grant Watchtower's cross-motion for judgment on the pleadings. In the alternative, it is respectfully requested that this Court grant Watchtower's

cross-motion to the extent of granting summary judgment in its favor and on its counterclaims against Lorterdan and direct the Clerk of the Court to enter a judgment declaring the following:

1. That Lorterdan did breach its contractual obligation to repurchase the property from Watchtower;

2. That Watchtower is the rightful owner of the property, or alternatively, directing Lorterdan to repurchase the property from Watchtower at the price of $11,500,000.00, together with nine percent (9%) interest from May 1, 2011 when Lorterdan was obligated to repurchase the property, costs and attorney's fees;

3. That all of Lorterdan's claims in this action against Watchtower are dismissed and that Lorterdan has no right or interest in or claim to the property;

4. That Lorterdan is not entitled to any payment from Watchtower for the property;

5. That the lis pendens filed by Lorterdan against the property is null and void and of no further effect and is to be removed by the Clerks of Rockland and Orange County;

Together with such other and further relief as this Court may deem just and proper.

Dated: October 12, 2011.

_____
John O. Miller, III.

STATE OF TEXAS      )
                    ) ss.:
COUNTY OF TRAVIS    )

SUBSCRIBED AND SWORN TO BEFORE ME on the 12th day of October, 2011, by John O. Miller, III.

JEFFREY NORBY
Notary Public, State of Texas
My Commission Expires
December 19, 2012

_____
Notary Public, State of Texas

5
Affidavit of John O. Miller