Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 108

***UNITED STATES BRANCH***
BA:BK  April 28, 2009  No. 978

Via E-Mail

GOVERNING BODY

Re:  Property Search Update for Week of April 20 – 26, 2009

Dear Brothers:

This detailed weekly property search update is provided for your consideration.

### Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County

Our petition for a zoning amendment is scheduled to be presented to the town board for the first time during a workshop session on Monday night, May 11, 2009.  This was a postponement from the original date of April 20, 2009, and we understand that the town delayed our appearance because a local controversial project is under intensive scrutiny.  This week a regional newspaper, the Journal News, reported that a proposed yeshiva, dormitory and staff housing project on a 7-acre property that has been under town review for two years is spawning growing opposition from residents.  The brothers are watching to see whether this controversial project might affect our proposal.

Earlier on the same day of our presentation to the town board, May 11, 2009, a meeting has been arranged with the town supervisor, at his request, to discuss our property tax exemption filing and how we might be able to assist the local community.  While the brothers anticipated the need for such a meeting based on early conversations with town officials, its urgency was likely increased when two weeks ago the Journal News reported on our proposed project under the headline, "Property-tax exemptions raise ire in town."  We anticipate that our organization's willingness to negotiate and provide some assistance should address this issue.

The brothers are taking practical steps in preparation for our upcoming appearance before the town board.  Design/Build, the Legal Department, and two outside legal firms have been working with the town's staff to draft the petition for a zoning amendment.  One of the outside legal firms that the brothers have worked with for several years is Whiteman, Osterman & Hanna LLP, a well-respected, Albany-based law firm that has lawyers who specialize in the environmental permitting process.  They are working in tandem with a well-qualified Rockland County legal firm, which is familiar with property development in the town.  In addition to using the environmental and engineering studies that were prepared by the previous owner to develop the property, the Property Search Group is also continuing to work with the previous owner and various town contacts that he has cultivated over the years.

**Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County**

A pre-application conference to discuss the approach for seeking approvals has been scheduled with Town of Warwick officials on Thursday morning, May 14, 2009. It is expected that four to six staff representing the town will attend. The brothers have been working with a local law firm that has been very helpful in conducting research at the Warwick town hall and making introductions to town staff. In addition to the pre-application conference, the brothers are also trying to arrange a separate meeting involving our Legal Department, our local attorney, and the planning board attorney to discuss our approach in more detail.

Three environmental and engineering studies are continuing to move ahead. So far, no major obstacles have been identified. One environmental study is intended to determine whether or not timber rattlesnakes, a protected species, use portions of the property planned for development. While our rattlesnake consultant's initial thought is that this is not likely, the first step is to identify any dens, which can only be done in the spring when the weather warms up and the rattlesnakes move out of the dens to bask in the sun. We understand that with the recent warm weather, this study is now in progress. The second environmental study is a phase two environmental assessment that will identify whether there is any soil contamination on the property that needs to be remediated. This is a fairly common study when conducting due diligence research on a property that has been developed in the past. An engineering firm has been retained and is expected to begin its work in the coming week. The brothers are having this study performed to validate the information they received from the study that Touro College had acquired. The third study is an engineering study of the dam, which is nearly complete. The engineering firm's report found that the dam is structurally sound, while at the same time recommending some maintenance and repairs that have been neglected over the years. In addition, the report recommended a supplementary study to determine whether or not an auxiliary spillway might be required. This supplementary study should be completed in coming weeks, at which time a more complete overview of the dam will be available. The brothers will provide their recommendation when the results of these studies are completed.

Thank you for taking the time to consider this update. The due diligence work is moving ahead on a parallel path for both properties, and the meetings in early May are the next significant milestones.

Your brothers,

***Signed by Leon Weaver, Jr.***

For the U.S. Branch Committee

cc: Alex Reinmueller
Daniel Rice

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 109

### UNITED STATES BRANCH
BA:BK  May 7, 2009  No. 1017

Via E-Mail

GOVERNING BODY

Re:  Property Search Update for Week of April 27 to May 4, 2009

Dear Brothers:

This weekly property search update is provided for your consideration.

### Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County

There have been several developments related to our application for property tax exemption, which was submitted on February 27, 2009.  On May 1, reporter John Walsh of the Journal News contacted the Office of Public Information saying that he had heard that the Town of Ramapo had denied our application for tax exemption.  As background, the Town of Ramapo Tax Assessor's "tentative assessment roll" is made available every year on May 1, so the reporter likely checked it as soon as it became available.  Acting as spokesman, Richard Devine responded to the reporter that no correspondence had been received, so we were not in a position to respond.  The reporter understood and said that he would ask for a response later in the week.

On Sunday, May 3, the Journal News published an article under the headline "Ramapo denies tax exemption for Jehovah's Witnesses."  The tax assessor was reported as saying that he denied the exemption because Watchtower purchased 292 building lots, not three parcels in the Town of Ramapo, which is what the property tax exemption filing listed.  He also said that the annual tax on the property would be approximately $350,000 per year.  On May 4, we received written notice that our application for tax exemption had been denied because the "properties do not exist on the assessment roll."

In reflecting on this process and recent press coverage, the Property Search Group thinks that in April the town supervisor became apprehensive about our application for property tax exemption due to community sentiment.  He did not make himself available for a meeting with us before May 1, and by so doing, he allowed the town to publicly deny our exemption, which would be a popular position.  It also gives him a position from which to negotiate with us regarding how we might be able to assist the community.

As suggested by our Albany-based legal counsel, Whiteman, Osterman and Hanna LLP, the brothers are working with the Legal Department to prepare a grievance that would be filed before the May 26 deadline but after our meetings with the town supervisor and town board on May 11.  The grievance must be submitted to reduce the potential for a situation where the Town Board might refuse to grant a zoning amendment, and we have to pay the taxes on land that we cannot develop for our use.  Our objective is to file

a grievance that protects our rights and positions us to negotiate concerning how we might be able to assist the local community.  The brothers also recommend that the Office of Public Information respond to the Journal News reporter expressing disappointment with the denial.

## Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County

On April 29, 2009, detailed reports describing our proposed development were delivered to our local attorney for distribution to Town of Warwick staff and the town supervisor.  These are expected to be considered in detail at the pre-application conference with Town of Warwick officials on Thursday morning, May 14.  In addition to the pre-application conference, the brothers are trying to arrange a separate meeting involving our Legal Department, the local attorney, and the planning board attorney to discuss our approach in more detail.

The three environmental and engineering studies are continuing to move ahead.  So far, no major obstacles have been identified.  The timber rattlesnake study is still in progress, the phase two environmental assessment has begun, and the supplementary engineering study of the dam is also underway.  The brothers will provide their recommendation when the results of these studies are completed.

Thank you for considering this update.  Next week we look forward in particular to reporting on the meetings that are scheduled with the Town of Ramapo.

Your brothers,

**Signed by Leon Weaver, Jr.**

For the U.S. Branch Committee

cc:  Alex Reinmueller
Daniel Rice

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 110

*UNITED STATES BRANCH*
BA:BK  May 13, 2009  No. 1035

Via E-Mail

GOVERNING BODY

Re: Property Search Update for Week of May 5 to 11, 2009

Dear Brothers:

This weekly property search update is provided for your consideration.

### Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County

On Monday, May 11, 2009, the Property Search Group met with the Town of Ramapo supervisor, Mr. Christopher P. St. Lawrence, and assessor, Mr. Scott Shedler. The supervisor took the lead in the discussion and said that this meeting was "about how we can all be good neighbors." He noted that since our proposal had become public, he had received expressions of concern from the local fire department, which had been promised a ladder truck by the previous developer, and the school district, which had expected to receive considerable property taxes but no children from the previously approved senior housing. While describing tax exemption as the key issue, the supervisor also mentioned that he had done his due diligence and contacted the Town of Patterson supervisor. The Patterson supervisor spoke very highly of the Watchtower Educational Center, describing it as "the cleanest place in the entire town." If the issue of property tax exemption can be resolved, the Ramapo supervisor said, "let's build it."

In discussing the details of what we can do for the community, the supervisor indicated that the town wants money, similar to the approach at Patterson, and is less interested in services. In its undeveloped state, the annual taxes on the property are $330,000. Before discussing a payment in lieu of taxes (PILOT), the supervisor noted that the previously approved Lorterdan senior housing project had negotiated a number of provisions that we would need to address. These included buying a ladder truck for the local fire department in the Village of Sloatsburg, building the sewer extension to serve the development, and paying all required special district taxes. Even wholly exempt not-for-profit entities are required to pay special district taxes (also known as ad valorem taxes) for services such as ambulance, fire, solid waste, lighting, and sewer. According to the town's estimate, a development assessed at $100 million plus the $11 million purchase price would annually pay approximately $300,000 in special district taxes. A property assessed $200 million would pay nearly double that figure.

The PILOT concept that was discussed involved the town receiving $300,000 per year, including the special district taxes. In its present undeveloped state, the property's annual special district taxes are approximately $40,000. By the time the new complex is fully occupied, the entire $300,000 would be covered by the special district taxes.

At the conclusion of the meeting, the town supervisor said that he would confidentially update the town board on our discussions, but we would not make an official appearance at the meeting that night. He also said that he has no objection to our doing whatever is necessary to legally protect our filing for tax exemption.

Now that this information has been received from the town supervisor, the Property Search Group will meet with our local legal counsel, which is experienced in crafting PILOT programs with the Town of Ramapo. The brothers are arranging a meeting with the Mayor of the Village of Sloatsburg to discuss the ladder truck that had been agreed to by the previous developer. Following these meetings, we will report back with additional information. Also, to legally protect our position, the Legal Department is working with the Real Property Department to file a grievance concerning the town's denial of property tax exemption.

## Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County

A pre-application conference with Town of Warwick officials will be held on Thursday morning, May 14. The brothers have also received word that the planning board attorney has considered our approach and agrees that our proposed project fits the zoning.

The three environmental and engineering studies are continuing. The timber rattlesnake study and phase two environmental assessment are both in progress. The supplementary engineering study of the dam has been approved and is underway. The brothers will provide their recommendation when the results of these studies are completed.

Thank you for considering this update and we look forward to reporting on the meeting with the Town of Warwick officials that will be held later this week.

Your brothers,

**Signed by Leon Weaver, Jr.**

For the U.S. Branch Committee

cc: Alex Reinmueller
Daniel Rice

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 111

### *UNITED STATES BRANCH*
BA:BK  May 27, 2009  No. 1096

Via E-Mail

GOVERNING BODY

Re:  Property Search Update for May 12 – 26, 2009

Dear Brothers:

There have been a number of recent developments involving both properties, and we apologize for combining the property search update for last week with this week's update.

### Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County

Yesterday afternoon, May 26, the Property Search Group met with the Village of Sloatsburg mayor, deputy mayor, fire chief, and town clerk. The Village of Sloatsburg is in the Town of Ramapo, and while our property is just outside of the village boundary, fire protection services would be provided by the all-volunteer fire department based in the village. As background, when obtaining his approvals for the 292 units of age-restricted housing, the previous owner had committed to contributing $700,000 for a fire truck when the project was built. During the meeting with us, the village mayor said that they needed a fire truck with a 100 foot-aerial reach, and they also alluded to the need for a building in which to put it. The brothers made it clear that this meeting was not a negotiation, but simply an opportunity to open dialogue with the village.

On May 20, representatives of the Property Search Group and the Legal Department met with our local legal counsel, which is experienced in crafting payment in lieu of taxes (PILOT) programs with the Town of Ramapo. Our local legal counsel recommended that we only negotiate with one group, if at all possible. This would mean negotiating only with the Town of Ramapo, while encouraging the Village of Sloatsburg to present its needs through the town. This could help us avoid a situation where we have to individually negotiate separate deals, allowing the town and village to play off each other. The meeting also allowed for a thorough discussion of the property tax exemption grievance process. The decision was made to file separate grievances for all 292 parcels on the property. The Legal Department worked through the weekend to file the necessary documents in a timely fashion by the deadline of May 26 with the towns of Ramapo and Tuxedo.

Now that the meetings have been held with both the Town of Ramapo and the Village of Sloatsburg, it is apparent that the town board will not allow the process to move ahead until the PILOT has been negotiated. The brothers recommend seeing how the process with Long Meadow Road property in the Town of Warwick progresses before negotiating a final commitment with the Town of Ramapo. This would improve the potential for meeting the budget that you approved of a figure that would begin low and could go up to $1.3 million. It is felt that when the Long Meadow Road project becomes publicly known, this may improve our negotiating position with the Town of Ramapo.

**Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County**

On May 14, representatives of the Property Search Group and Legal Department had a very favorable pre-application conference with representatives of the Town of Warwick. The town's attendees included the town supervisor, planning board chairman, town planner, planning board attorney, and planning board engineer. After hearing an explanation of our organization, the town representatives were particularly impressed by map overlays that showed how our use of the property would be clustered, leaving most of the property in its natural state. This was visually contrasted with drawings showing the preliminary approvals for a university that had been obtained by King's College approximately ten years ago. Our proposal was also shown to affect much less land than the sprawling proposal presented by Touro College. The planning board attorney indicated that he felt our project fit the zoning, similar to another church in the town that had recently proposed a gym and classrooms, which were viewed as incidental to the primary religious use.

The planning board chairman said that he and a member of the planning board would like to visit Wallkill Bethel on a tour in the near future. A number of town staff and members of other boards, including the boards overseeing architectural review and conservation would also be invited. They also asked if Watchtower incorporates "green," environmentally-friendly design features, remarking that this would be an important feature to the town. The town supervisor mentioned that he had spoken to the Town of Shawangunk supervisor, who spoke favorably of us as good neighbors who lend a hand when we can. The next step is to prepare and submit a full application to the planning board, which the brothers are working to accomplish in time for an appearance towards the end of July.

The three environmental and engineering studies are continuing. The phase two environmental assessment and engineering study of the dam are both in progress. An informal update concerning the timber rattlesnake study was received on May 26. While some timber rattlesnakes have been located near the IBM facility, this is approximately ½ mile away across the lake, and none have been located on our property. While that is favorable, the study is still in progress, and we await the final results. The brothers will provide their recommendations when the results of these studies are completed.

Thank you for considering this property search update.

Your brothers,

**Signed by Leon Weaver, Jr.**

For the U.S. Branch Committee

cc:  Alex Reinmueller
     Daniel Rice

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 112

## *UNITED STATES BRANCH*
BA:BK   June 4, 2009   No. 1123

Via E-Mail

GOVERNING BODY

Re:  Property Search Update for May 27 to June 2, 2009

Dear Brothers:

Please find enclosed the weekly property search update.

### Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County

On May 27, 2009, the Property Search Group received a draft Community Benefit Agreement from the Town of Ramapo, which is being reviewed with the Legal Department. In summary, the draft agreement formally presents the town's requests as discussed at the meeting with the town supervisor on May 11, 2009. The commitments would include: (a) making a variable annual payment for five years. (b) contributing a new fire truck to the Village of Sloatsburg volunteer fire department, (c) extending the sewer line to our property on Sterling Mine Road, and (d) paying the out-of-district school tax rate for any students, which should be zero. The actual details are being carefully analyzed in view of the budget that you approved, which would begin low and could go up to a total of $1.3 million.

The Town of Ramapo must release its final tax roll by July 1, 2009. As we reported earlier, the town denied our application for tax exemption, and we filed a timely grievance; however, it seems unlikely that the town will grant the exemption and concede its negotiating position unless we execute the Community Benefit Agreement before July 1, 2009.

As noted in last week's update, the brothers recommend seeing how the process with the Long Meadow Road property in the Town of Warwick progresses before negotiating a final commitment with the Town of Ramapo. An agreement with the Town of Ramapo would be a major step forward in the rezoning process, which would ultimately affect the property's resale value if we decide not to develop it.

In addition, the brothers are preparing a report comparing the potential taxes and community expenses for the Sterling Mine Road and Long Meadow Road properties in the context of what has been done at the Wallkill, Patterson, and Brooklyn Bethel complexes. This may be helpful in considering the Town of Ramapo's proposal.

### Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County

As of today there are twenty days remaining in the 150-day due diligence period for this property. The due diligence period ends on June 23, 2009, after which there are 30-days to close. As reported last week, representatives of the Property Search Group and Legal Department had a very favorable pre-application conference with representatives of the Town of Warwick. The other due diligence information that the brothers are awaiting involves the engineering study of the dam, the phase two environmental assessment, and the timber rattlesnake study. It seems that the presence of timber rattlesnakes would have the most significant effect on our ability to obtain

needed environmental permits. The most recent timber rattlesnake study update, received on June 1, 2009, indicates that the nearest den is approximately one mile from our property, which the expert described as "good." This study, along with the others, is ongoing, and results should be received in coming weeks.

As of May 29, 2009, staff in the Town of Warwick's Planning Board and Town Clerk's office were clearly aware that Watchtower has submitted development plans for this property. It therefore seems more likely that our proposal for this property may be picked up by local media outlets.

**Request for a Meeting with the Governing Body**

Based on the above, we would like to suggest that a meeting be arranged involving our committee, the Property Search Group, and the Governing Body in advance of the June 23, 2009, deadline for the Long Meadow Road property. Having this meeting on Wednesday, June 17, 2009, would provide an opportunity to present the brothers' findings on the Long Meadow Road property and discuss the Sterling Mine Road property, including the details of a Community Benefit Agreement. It would seem that having a meeting at this critical time would serve to confirm the overall approach for both properties.

Thank you for considering this property search update.

Your brothers,

***Signed by Leon Weaver, Jr.***

For the U.S. Branch Committee

cc: Alex Reinmueller
    Daniel Rice

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 113

### *UNITED STATES BRANCH*
BA:BH June 10, 2009 No. 1152

Via E-Mail

GOVERNING BODY

Re: Property Search Update for June 3-9, 2009

Dear Brothers:

Please find below the weekly property search update.

### Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County

In harmony with your direction in letter No. 1242G, dated GAX:AG June 4, 2009, to wait until we see how matters progress with the Long Meadow Road property, a request was made that the town board delay considering the draft Watchtower Community Benefit Agreement. We were informed that the town board has postponed its consideration of this subject until June 24, 2009.

### Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County

As of today there are thirteen days remaining in the 150-day due diligence period for this property. The due diligence period ends on June 22, 2009, after which there are 30-days to close. We are providing a detailed update to you concerning our missing $500,000 deposit in a separate letter.

This week, Touro College's attorney has expressed a strong desire to close a month early, during the month of June. While their attorney has explained that this would be good for their internal financial bookkeeping, the Property Search Group is investigating whether this might be due to some sort of financial distress.

The Property Search Group is also continuing to receive information concerning the engineering study of the dam, the phase two environmental assessment, and the timber rattlesnake study. Preliminary information has not indicated any critical flaws; however, it appears that more comprehensive draft reports will not be available by the June 22, 2009, deadline.

At our meeting on Wednesday, June 10, 2009, we will review the status of both properties with the Property Search Group in preparation for our meeting with you next week.

Thank you for considering this property search update.

Your brothers,

{Signed by Leon Weaver, Jr.}
For the U.S. Branch Committee

cc:   Alex Reinmueller
      Daniel Rice

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 114

*UNITED STATES BRANCH*
BA:RA  June 18, 2009  No. 1187

Via E-Mail

GOVERNING BODY

    Re:  Meeting with Representatives of Touro College

Dear Brothers:

    This is to provide an update on the meeting held today with representatives from Touro College.  Three individuals from Touro, their President and Chief Administrative Officer, their Senior Vice President and Chief Financial Officer, and their head of Real Estate Development Design and Construction, met with the Property Search Group and Brother Moake from the Legal Department.  The brothers report that the meeting went as well as could be expected but that no agreement was reached.  The Touro representatives returned to their office to update the Chairman of their Board and seek direction.  Although Touro could reject the adjusted offer, from their comments it can be assumed that they will respond with a counter offer.  They understand that if an agreement cannot be reached, Watchtower will provide written notice of termination on Monday.

    Among the matters discussed was to review what the 150-day due diligence period has revealed regarding the reservoir dam and spillway, the protected species and the delays that will result from additional studies that will likely be required, and costs we will incur if we have to unduly delay our departure from Brooklyn.  The brothers informed the Touro representatives that the original offer was not based on the actual market value of the property and our offers have always been more than market value.  However, the due diligence has identified other quantifiable costs that must be factored in.  Therefore, the brothers informed Touro that Watchtower's adjusted offer is $15 million.  Touro's representatives said that the offer would probably not be acceptable but wanted to know if Watchtower could close before the end of June.  The brother's informed them that if this adjusted offer is acceptable we are prepared to close in June and would inform the attorneys and title company to begin preparing the closing documents.

    The brothers further report that the meeting was cordial and pleasant but shortened since they wanted to get back to their office to set up a conference call with their chairman.  Since Friday evening is a Sabbath observance, the brothers expect to receive a response tomorrow.

    Thank you for noting this update.

                    Your brothers,

                    {Signed by Harold Corkern for Leon Weaver, Jr.}

                    For the U.S. Branch Committee

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 115

### *UNITED STATES BRANCH*
BA:RA  June 23, 2009  No. 1200

Via E-Mail

GOVERNING BODY

Re:  Update on Negotiations with Touro College (Revised)

Dear Brothers:

We asked the Property Search Group to prepare a narrative report on the events of the past few days as they relate to the negotiations with Touro College. The report begins with last Wednesday and concludes with the most recent information they have to provide.

**WEDNESDAY, JUNE 17, 2009**

- Representatives from the Branch Committee, the Property Search Group, and the Legal Department met with the Governing Body regarding the upcoming date of June 22, 2009, when the 150-day Inspection Period for the Touro property expires and the $500,000 deposit becomes non-refundable. The Closing Date is to be 30 days later (on or before July 22, 2009).
  - After receiving an update on what the studies performed during the Inspection Period revealed, the Governing Body directed that the Purchase Price be reduced from $23.5 million to $20 million. If Touro does not accept the revised offer, the contract should be terminated before the end of the Inspection Period, June 22. The offer should begin well below $20 million but should not exceed that amount.
- Also discussed at the same meeting was the status of the Sterling Mine Road site and the Town of Ramapo's requirement that a Community Benefit Agreement valued at $2.2 million be executed before granting property tax exemption. The Governing Body had previously approved $1.3 million for this purpose.
  - The Governing Body also gave direction to slow down the Town of Ramapo's process until the Touro project was farther along. It is also important not to do anything that would jeopardize our ability to require the Seller (Lorterdan) to buy the property back if need be.

**THURSDAY, JUNE 18, 2009**

- Brothers from the Property Search Group and Legal Department met with three representatives from Touro College who had asked to meet with us to discuss,

Governing Body
BA June 23, 2009
Page 2

among other things, that the closing take place before the end of June. Although the meeting was requested by Touro, the brothers used it as a forum to revise the offer in accord with the Governing Body's direction.

- The brothers put together an outline of points to discuss with Touro and this was sent to the Governing Body for their information. (See Attachment)
  - o A reduction of the Purchase Price from $23.5 million to $15 million and a Closing Date before the end of June as requested by Touro was presented.
  - o The reasons for reducing the Purchase Price were as follows:
    1. Engineering studies revealed maintenance and upgrades that are needed on the dam and spillway at a cost of $1 million.
    2. The Protected Species study has revealed so far that although no timber rattlesnakes have been found on the site, it did identify the presence of timber rattlesnakes in a 270° radius around the property within a one-mile distance. This will result in at least a one-year delay on the project and a financial impact of $5 million due to inflationary costs on a $150 million construction project.
    3. The buildings and structures on the property have been excessively vandalized and damaged during the Inspection Period. The contract stipulated that only normal wear and tear is acceptable.
    4. A deduction needs to be attached for the costs of operation in Brooklyn that will result from a delay in exiting Brooklyn.
  - o An Amendment to the Purchase and Sale Agreement was drawn up by the Legal Department to amend the Purchase Price to $15 million and the Closing Date to June 30, 2009.
    5. The amendment was sent to Touro's Chief Financial Officer (CFO).

**FRIDAY, JUNE 19, 2009**

- The Branch Committee received written direction from the June 17 meeting with the Governing Body stating that the starting price of the reduced offer to Touro should be $17.5 million.
  - o This direction from the Governing Body came in writing after the Thursday meeting with the representatives of Touro when the $15 million offer was presented.
- The Property Search Group received a response from Touro's CFO stating: "I discussed your proposal with members of the Board of Trustees, including the President and Chairman of the Board, and the consensus is that Touro has no interest in pursuing your revised offer."

Governing Body
BA June 23, 2009
Page 3

- o Brothers from the Property Search Group and the Branch Committee determined that the next step should be to contact Touro on Sunday, June 21 (after their Sabbath observance) and present a revised offer nearer to the $20 million that the Governing Body approved.

- Brothers Weaver and Walls updated Brothers Lösch and Splane about Touro's response and received direction to present a $19 million offer and that Watchtower is willing to close in June.

### SATURDAY, JUNE 20, 2009

- Brother Walls updated Brother Lösch at breakfast who asked that the Property Search Group update Brothers Weaver and Walls as soon as information is available on Sunday.

### SUNDAY, JUNE 21, 2009

- Dan Rice representing the Property Search Group contacted Mr. Mark Hasten, Chairman of the Board of Trustees and Overseers for Touro College, to further discuss the revised offer. Mr. Hasten is firm and unyielding and says that Touro is prepared to close but only at the original agreed upon price. (A separate Telephone Call Log of this conversation was circulated. – See Attachment)

- In the course of the conversation, Mr. Hasten offered a 30-day extension if needed. He said that there was no reason for his people to press for a June closing.

  - o It was confirmed that the 30-day extension applied to both the Inspection Period and the Closing Date.

  - o Brother Weaver received direction from Brother Lösch to proceed with the 30-day extension.

  - o Brother Moake prepared an amendment to the Purchase and Sale Agreement allowing for a 30-day extension.

### MONDAY, JUNE 22, 2009

- Brother Max Larson signed the amendment for the 30-day extension and it was sent to Touro's CFO requesting that they sign and return it no later than 1 p.m. that day.

  - o The timing is critical at this point because the Inspection Period ends on this date and the $500,000 deposit is to become non-refundable.

  - o If the decision is to terminate the contract, the Notice of Termination must be hand delivered and stamped as received by both the offices of Touro College and the Attorneys for Touro College.

Governing Body
BA June 23, 2009
Page 4

- At 12 p.m. Brother Lett called and received an update on the status. He reconfirmed that if Touro is unwilling to extend the contract and not willing to accept a $20 million offer, that the Property Search Group should follow through with the Governing Body's direction and terminate the contract. He stated that if no paperwork was signed that day that we would in effect be losing $1 million. (The stolen escrow money and the non-refundable deposit.)

- At 1:15 p.m. Dan Rice called Touro's CFO who was unable to accept the call. At 1:45 p.m. Mr. Hasten returned the call to discuss Watchtower's position.

  o Mr. Hasten said that if Watchtower is willing to close in June, then he is willing to reduce the Purchase Price by $500,000, to $23 million.

  o He was informed that Watchtower is prepared to increase its offer from $19 million to $20 million in order to bring this to a conclusion. After much discussion and Mr. Hasten's realization that $20 million is our top offer, he said that he will discuss this with his fellow board members and call back. He was again reminded that time is crucial as Watchtower will not let the day end without either reaching some agreement or terminating the contract.

  o The Legal Department prepared (1) a Notice of Termination which Brother Max Larson signed, and (2) an agreement to amend the Purchase Price to $20 million and remove the "time is of the essence" clause from the closing date. These documents were held until it is necessary to deliver them, or an acceptable agreement is reached.

  o At 4 p.m. Mr. Hasten called saying that he is not able to reach an agreement and that further talk will be necessary. He asked for Watchtower's comment. He was again reminded that today is an important date and we cannot permit the deposit to become non-refundable. Therefore, Brother Rice recommended that Mr. Hasten sign the 30-day extension that Touro received that morning. Doing so will allow the time he needs to talk with his board members, and we assume for further negotiations with us. He agreed to sign the extension and asked for the negotiation to continue tomorrow.

    ▪ At 4:15 p.m. the faxed Agreement to Amend Purchase and Sale Agreement to extend the Inspection Period another 30 days was received by the Property Search Group. The Legal Department determined it is acceptable and Mr. Hasten was informed that we received the fax.

    ▪ The other two documents, Notice of Termination, and Amendment to modify the Purchase Price to $20 million, were held and not delivered.

Governing Body
BA June 23, 2009
Page 5

### TUESDAY, JUNE 23, 2009

- On behalf of the Property Search Group, Brother Rice called Mr. Hasten who again said we both have to 'give a little.' Brother Rice explained that the Engineering and Protected Species studies identified additional costs that will be associated with any development of the property.
  - o This would include the $1 million for repairs and upgrades to the dam and spillway, and the $5 million that must be factored in for inflation if the project is delayed a year or more for additional timber rattlesnake studies.
- It was explained to Mr. Hasten that this $6 million in costs reduces the actual value to Watchtower to $17.5 million. However, to bring this transaction to a successful conclusion, on Sunday the offer was revised to $19 million. By increasing the offer to $20 million Watchtower has reached the limit of what it is willing to pay.
  - o Mr. Hasten asked several times "is this is as far as you can stretch?" When he realized that it was, he inquired if it is possible to close sooner than the extension allows. Brother Rice said that Watchtower is willing to close sooner, perhaps during the week of July 14-17, 2009.
  - o A 3 percent broker's commission ($600,000) is being paid by Touro and they are requesting that Watchtower split the broker's commission. Watchtower's portion would be $300,000 if approved.
  - o Six of the eleven members of his board must agree to the sale. Mr. Hasten said they will ask him what he thinks they should decide. He told Brother Rice to not tell anybody but he will tell his board, "I think we should agree."
- Shortly after 4:00 p.m. Brother Rice received a call from Mr. Martin Oliner, Chairman of the Finance Committee for Touro College. Apparently, the purpose of the call was to renegotiate what Mr. Hasten had agreed to.
  - o Mr. Oliner said he was expressing outrage and stated that Watchtower is not acting in good faith by asking for an extension, and after receiving it, refusing to negotiate.
  - o He said that if we were not willing to meet their price the contract should terminate. (He also had no awareness of why Watchtower's offer had been reduced.)
- He was informed that it was not Watchtower that asked for an extension, but rather, we were prepared to terminate the contract on June 22, before the inspection period expired. In addition, it was explained that there are $6 million in quantifiable costs that have been revealed as a result of the studies that have been and are being performed.

Governing Body
BA June 23, 2009
Page 6

- Mr. Oliner said that too many on the Board are unhappy and the Board's position is the same as it was on Friday. He said, "At $20 million we are not prepared to move forward."
  - o Brother Rice assured him that the $20 million offer is the limit of what we will offer for the property. We purchased a property of equivalent size about a mile from Touro in February which is a matter of record. We would prefer to develop Touro's property, but if Touro will not move forward, we understand. Brother Rice asked for a formal statement that they reject our offer.
- At that point, Mr. Oliner said that what he had said is not the final decision of the board, that he would make calls to board members, and call back by 6:30 p.m. Brother Rice gave him his cell phone number to call after hours.
  - o In the mean time our committee informed the Property Search Group that we had received your verbal approval to split the broker's commission with Touro. Brother Rice informed Mr. Hasten.
- Mr. Oliner called back at 6:15 p.m. in a more conciliatory manner, now asking that we at least add another $700,000 to bring the price to $21 million. He was informed that Watchtower has reached the maximum of what we spend, but in an act of good faith, we had agreed to Mr. Hasten's request and had informed him of such.

Based on a telephone conversation with members of the Governing Body late Tuesday afternoon, we are proceeding with your verbal direction to: (1) Offer the Purchase Price of $20 million for the Touro property; (2) Adjust the closing to occur in mid-July; and (3) Share the brokers commission between Touro and Watchtower ($300,000 from Watchtower). This has been addressed with both Mr. Hasten and Mr. Oliner from Touro and expect to receive Touro's response in the next day or so.

Thank you.

Your brothers,

**Signed by Leon Weaver, Jr.**

For the U.S. Branch Committee

Attachments (2)

cc:  Alex Reinmueller
     Property Search Group

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 116

***UNITED STATES BRANCH***
BA:RA  June 25, 2009  No. 1207

Via E-Mail

GOVERNING BODY

Re:  Update on Negotiations with Touro College

Dear Brothers:

We are pleased to report that Mr. Mark Hasten, Chairman of the Board of Trustees and Overseers for Touro College, called and informed Brother Rice that their board has accepted Watchtower's revised offer.  The adjusted terms are as follows:  (1) The Purchase Price is $20 million;  (2) The closing is to take place between July 14-17, 2009; and (3) The broker's commission is to be shared equally between Touro and Watchtower. The Legal Department is preparing the Agreement to Amend the Purchase and Sale Agreement for forwarding to Touro for signing.

In the course of the conversation Mr. Hasten stated, "Please invite me to your open house and I will come from anywhere in the world to be there.  I know you people are excellent people.  You have an excellent reputation and it has been a pleasure doing business with you."

We wish to express our Branch Committee's appreciation for the clear direction you have given on this matter and we thank Jehovah for blessing your decision.

Your brothers,

{Signed by Harold Corkern for Leon Weaver, Jr.}

For the U.S. Branch Committee

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 117

### UNITED STATES BRANCH
BA:BK  June 30, 2009  No. 1230

Via E-Mail

GOVERNING BODY

Re:  Property Search Update for June 24 – 30, 2009

Dear Brothers:

Please find enclosed the weekly property search update.

**Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County**

On June 26, 2009, we received notice from the Town of Ramapo Board of Assessment Review that our property tax grievance was denied. This means that we will receive a tax bill for the property at its full assessed value. We are also negotiating a community benefit agreement where this year's taxes would possibly count as part of the payment which, if successful, will result in paying a smaller amount over the term of the agreement. The Real Property Department reports that the seven-acre parcel in the Town of Tuxedo in Orange County received a 60% reduction in its property tax assessment.

**Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County**

On June 30, 2009, we forwarded a second amendment to Touro College in harmony with what was described in our letter No. 1207, dated BA:RA June 25, 2009. Although Touro College has not yet signed the agreement, various details are being resolved and we appear to be on track for a closing on or before July 17, 2009, at $20 million. The Design/Build Department is simultaneously preparing a formal project application to the town with a target submittal date of late July.

**Legion of Christ – Town of Mount Pleasant, Westchester County**

The Property Search Group has asked the broker about the status of the Legion of Christ property in Westchester County. In early June, when the broker inquired in our behalf, he was informed that the property is not for sale. He will follow up with another inquiry soon but expects to receive the same response.

Thank you for considering this property search update.

Your brothers,

**Signed by Leon Weaver, Jr.**

For the U.S. Branch Committee

cc:   Alex Reinmueller
      Daniel Rice

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 118

### UNITED STATES BRANCH
BA:BK  July 1, 2009  No. 1232

Via E-Mail


GOVERNING BODY

    Re:  Touro Negotiations - Acceptance of Revised Offer

Dear Brothers:

    We are pleased to inform you that last night we received by fax the signed Agreement to Amend Purchase and Sale Agreement from Touro College binding them to sell their property in the Town of Warwick in Orange County.  The terms of the amendment include: (1) The Purchase Price is reduced from $23.5 million to $20 million, (2) The closing is to take place on or before July 17, 2009, (3) The broker's fees and/or commission (not to exceed 3% of the purchase price) is to be equally split between Touro and Watchtower.  Also, upon Watchtower's signing of the Amendment, the $500,000 deposit becomes non-refundable.  The deposit does not need to be placed in a separate escrow account but will be paid as part of the final settlement at closing.

    Thank you for noting this update.

                      Your brothers,

                      **Signed by Leon Weaver, Jr.**

                      For the U.S. Branch Committee

cc:  A. Reinmueller
      D. Rice

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 119

### *UNITED STATES BRANCH*
BA:BK  July 7, 2009  No. 1259

Via E-Mail

GOVERNING BODY

Re:  Property Search Update for July 1 – 7, 2009

Dear Brothers:

Please find enclosed the weekly property search update.

**Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County**

The brothers are continuing to negotiate with the town on the proposed community bene-fit agreement.  You approved a budget that would start low and go up to $1.3 million, whereas the town has asked for $2.2 million.  In view of this, the brothers sent the town a proposal for $1.3 million plus payment of the first year's property taxes, estimated at approximately $350,000.  They expect to have a meeting with the town supervisor soon to discuss this matter further.

**Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County**

Arrangements are being planned to further secure and clean up the property after the clos-ing date, which is tentatively scheduled for Tuesday, July 14, 2009.  The Design/Build Depart-ment is preparing a formal project application to the town with a target submittal date of late July.

Thank you for considering this property search update.

Your brothers,

*Signed by Harold L. Corkern for Leon Weaver, Jr.*

For the U.S. Branch Committee

cc:   Alex Reinmueller
      Daniel Rice

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 120

### *UNITED STATES BRANCH*
BA:BK  July 16, 2009  No. 1301

Via E-Mail

GOVERNING BODY

Re:  Property Search Update for July 8 – 14, 2009

Dear Brothers:

Please find enclosed the weekly property search update.

**Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County**

A meeting has been scheduled with the town supervisor on Thursday, July 16, 2009, to discuss the proposed community benefit agreement and inform him of our pending acquisition of the Long Meadow Road property from Touro College.

**Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County**

The closing on the property was rescheduled to Friday, July 17, 2009, to allow Touro College additional time to gather some necessary legal documents. An internal meeting was held on Friday, July 10, 2009, to discuss security and clean up of the property, and work on this subject is ongoing. The Design/Build Department is preparing a formal project application to the town with a target submittal date of late July, and a meeting was held with the town supervisor on Tuesday, July 14, 2009.

**Other Properties**

The brothers continue to receive information on potential development sites in Westchester County that may also be suitable for our use. Since we expect to own two properties within the week, we are seeking your direction on whether the Property Search Group should continue to pursue additional properties in between Brooklyn and Patterson.

Thank you for considering this update.

Your brothers,

**Signed by W. Maxwell Lloyd for Leon Weaver, Jr.**

For the U.S. Branch Committee

cc:  Alex Reinmueller
 Daniel Rice

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 121

## *UNITED STATES BRANCH*

BG:BW   July 17, 2009   No. 1311

Via E-Mail

GOVERNING BODY

     Re:  Purchase of the Former Touro College Property in Tuxedo Park, New York
           (Town of Warwick)

Dear Brothers:

    The closing for the purchase of the 253-acre former Touro College property in the Town of Warwick, Orange County, New York, was held today at the Real Property Department offices in Brooklyn.  The property was purchased at the agreed-upon price of $20 million.  All parties have confirmed that they received their funds via wire transfers.  The title company as escrow agent will record the appropriate documents in Orange County, New York.

    The actual amount that was dispersed at closing was $20,548,305.49, once the Purchase Price, Title Insurance and recording fees, pro-rated taxes and expenses, and commissions were paid.  The closing went smoothly and the excellent work of the Real Property Department, Legal Department and Treasurer's Office assisting with this project has been very much appreciated.

    We are pleased to see Jehovah's blessing on our efforts to follow through with your direction in this matter, and look forward to further developments with the use of this new property.

                          Your brothers,
                          **Signed by John Kikot**
                          **for Leon Weaver, Jr.**

                          For the U.S. Branch Committee

cc:  D. Rice
     A. Reinmueller

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# **Document 122**

*UNITED STATES BRANCH*
BA:BK  August 5, 2009  No. 1377

Via E-Mail

GOVERNING BODY

Re:  Property Update for July 15 to August 4, 2009

Dear Brothers:

Please find enclosed the weekly property update.

### Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County

A meeting was held with the Town of Ramapo supervisor on July 16, 2009, to discuss the proposed Community Benefit Agreement. As described in our letter No. 1332, dated BA:BD July 24, 2009, we are awaiting your direction on this matter. Additionally, the Legal Department filed a legal petition concerning the town's illegal property tax before the deadline of July 31, 2009. The brothers are acting in harmony with your direction in letter No. 1403G, dated GED:AH July 15, 2009, to "not do anything to jeopardize our being able to return the property back to the original owner after the two years." We anticipate providing additional information concerning this issue in a future report.

### Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County

As of today, our purchase of the property on July 17, 2009, has not been reported on by the media. On July 21, 2009, a meeting was held at the site to make practical arrangements for site security, safety, and cleanup. This work is being coordinated by the Maintenance Construction Department under the direction of our Branch Committee. This work is being done in close harmony with the Property Search Group and various departments at Brooklyn and Wallkill. A significant amount of work has already been accomplished, including posting the property with "No Trespassing" signs, clearing broken glass, securing damaged doors, arranging to replace security fencing, cleaning up trash and debris, and inspecting the damaged electrical and water utilities. The local building inspector has visited the site, and discussions have been held with personnel from the local fire department, water treatment plant, and electric utility. It is reported that we have been well-received by community officials, who are genuinely pleased to see us cleaning up the property.

The Design Build Department has been preparing the documentation for beginning the permit process. Our letter No. 1361 to the Publishing Committee, dated BA:DA July 31, 2009, is seeking permission to submit the necessary project applications and fees to

the Town of Warwick. Thereafter, it is estimated that our first appearance before the planning board will occur later this month or during September. We expect that the permitting process will require at least a year.

Thank you for considering this update.

Your brothers,

**Signed by Leon Weaver, Jr.**

For the U.S. Branch Committee

cc:   Alex Reinmueller
       Daniel Rice

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# **Document 123**

### UNITED STATES BRANCH
BA:BK August 11, 2009 No. 1395

Via E-Mail

GOVERNING BODY

Re: Property Update for August 5 to August 11, 2009

Dear Brothers:

Please find enclosed the weekly property update.

**Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County**

As described in our letter No. 1332, dated BA:BD July 24, 2009, we are awaiting your direction concerning the Community Benefit Agreement proposed by the Town of Ramapo supervisor. The brothers are acting in harmony with your direction in letter No. 1403G, dated GED:AH July 15, 2009, to "not do anything to jeopardize our being able to return the property back to the original owner after the two years."

**Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County**

The Maintenance Construction Department is coordinating necessary cleanup to make the property safe and secure. Effort is focused on the building nearest Blue Lake, which will serve as a base for work in the other large buildings. These large buildings should be useful during future construction for equipment and materials staging, and some may have a permanent use. Therefore, the brothers plan to protect these existing valuable structures from the weather. Roof repairs are planned, debris and brush removal is continuing, and security fencing replacement is in progress. For the next few months, a local security company has also been retained to prevent trespassing on the property, particularly after-hours and on weekends. We are gathering information concerning options for providing long-term security at the property.

It was recently reported in the local newspaper that IBM Corporation is laying off some employees who work at the adjacent property. We are following these developments with interest. In the meantime, a post office box has been acquired at the Tuxedo Park Post Office, contact has been made with the nearby Sterling Forest State Park, and arrangements are being made to meet with the Town of Warwick Police Department. The Design/Build Department will submit our project application to the Town of Warwick Planning Board on August 12, 2009, with the first Planning Board meeting to be scheduled thereafter.

Thank you for considering this update.

Your brothers,

**Signed by Leon Weaver, Jr.**

For the U.S. Branch Committee

cc: Alex Reinmueller
Daniel Rice

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 124

### *UNITED STATES BRANCH*
BA:BK  August 18, 2009  No. 1418

Via E-Mail

GOVERNING BODY

Re:  Property Update for August 12 to August 18, 2009

Dear Brothers:

Please find enclosed the weekly property update.

**Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County**

As described in our letter No. 1332, dated BA:BD July 24, 2009, we are awaiting your direction concerning the Community Benefit Agreement proposed by the Town of Ramapo supervisor.  The brothers are acting in harmony with your direction in letter No. 1403G, dated GED:AH July 15, 2009, to "not do anything to jeopardize our being able to return the property back to the original owner after the two years."

**Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County**

The Design/Build Department submitted our project application to the Town of Warwick Planning Board on August 12, 2009.  The application will be considered in a workshop session on Monday, August 24, 2009, and at a regular planning board meeting on Wednesday, September 2, 2009.  No media coverage has occurred thus far.

The Maintenance/Construction Department continues to coordinate necessary cleanup to make the property safe and secure.  Approximately thirty dumpsters of debris have been removed, and arrangements for repairs to the roof and essential utilities are ongoing.  The security fence around the buildings is nearly complete and brush is being cleared from around the buildings and driveway.  A local security company is patrolling the property to prevent weekend and after-hours trespassing.  On Friday, August 14, 2009, the brothers introduced themselves to the local police chief and were favorably received.

Thank you for considering this update.

Your brothers,

**Signed by Leon Weaver, Jr.**

For the U.S. Branch Committee

cc:   Alex Reinmueller
       Daniel Rice

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 125

### *UNITED STATES BRANCH*
BA:BK  September 15, 2009  No. 159

Via E-Mail

GOVERNING BODY

Re:  Invitation for Town of Warwick Officials to Visit Patterson Bethel

Dear Brothers:

As you suggested in letter No. 134G, dated GAX:AH September 9, 2009, we have inquired regarding Town of Warwick officials also being invited to visit Patterson Bethel since it more closely reflects the proposed development of the Tuxedo Park property.  In presenting this to the Property Search Group, we learned that they have already invited town officials to visit Patterson Bethel on several occasions.

On February 6, 2009, the brothers invited the Warwick town supervisor to visit Wallkill and Patterson Bethel.  He visited Wallkill Bethel later that month, spent some time with the local town supervisor, and seemed favorably impressed.  At a pre-application conference with town officials and consultants on May 14, 2009, Wallkill and Patterson Bethel were described in detail including photographs, and the brothers invited them to visit.  The town officials were receptive to the idea, but since no definite arrangements were made, this same invitation was extended at the planning board meeting on September 2, 2009.  The planning board members discussed it and seemed inclined to visit Wallkill Bethel because it is closer.  They may also feel more geographically connected to communities located west of the Hudson River.

Therefore, while the invitation to visit Patterson Bethel has not been accepted so far, we see the benefits and the brothers have assured us that they are continuing to keep the invitation before town officials as the project review moves ahead.

Your brothers,

**Signed by Leon Weaver, Jr.**

For the U.S. Branch Committee

cc:    Alex Reinmueller
       Daniel Rice

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 126

## *UNITED STATES BRANCH*
BA:MC  December 2, 2009  No. 463

Via E-Mail

GOVERNING BODY

     Re:  Property Search Group

Dear Brothers:

     Nearly five years have passed since your memorandum GAJ:EO January 5, 2005, directed our committee to provide a list of brothers to be appointed to assist with a search for property. In harmony with your direction, our committee notified Brothers Jeff Baker, Robert Pollock, Daniel Rice (chairman), and Lon Schilling of their appointment to care for this assignment. As you are aware, this Property Search Group has accomplished much since its formation, including assessing over 100 properties with potential in the target area and acquiring the Tuxedo Park Property and the Ramapo Property. At this time we are seeking your direction concerning the present role of the Property Search Group.

<u>Searching for Additional Properties with Excellent Potential</u>

     In BA:BK July 16, 2009, letter No. 1301, our committee sought your direction on "whether the Property Search Group should continue to pursue additional properties in between Brooklyn and Patterson." In your response GAX:AH July 22, 2009, letter No. 1432G, it stated in part, "We do not want them to pursue additional property actively, but instead they should focus their efforts on getting permits to develop the [Tuxedo Park] property especially. However, if an additional property comes to their attention that has excellent potential they may inform us accordingly." To date, we are not aware of any other property with excellent potential that has come to the Property Search Group's attention.

<u>Tuxedo Park Property</u>

     The Design/Build Department has been pressing forward to obtain necessary permits for development of the Tuxedo Park Property. At the same time, the Maintenance/Construction Department has been taking the lead in cleaning up the property and making it safe and secure. Also, in GED:AH October 28, 2009, letter No. 296G, you informed us of the appointment of the Tuxedo Park Project Team, consisting of Brothers Gary Breaux, Harold Corkern, Enrique Ford, Tom Kalimeris, Robert Pollock (chairman), Lon Schilling, and Ralph Walls. With the formation of this project team, we understand that you expect our committee to follow the typical organizational approach of pursuing permits using the Design/Build Department with the involvement of an appointed project team, rather than having the Property Search Group take the lead.

Ramapo Property

For the Ramapo Property, the Property Search Group has been following the course described in our BA:BD June 12, 2009, letter No. 1163, "to move slowly and deliberately with a [Community Benefit Agreement] and the adjustment to the zoning text. In this way, the Sterling Mine Road property can act as a backup in the unlikely event that there is a future roadblock in getting our approvals for the Touro College site." The brothers are carefully following your direction in GAX:AH June 18, 2009, letter No. 1308G, that "[a]fter considering what you had to say as well as the contents of your letters, we have decided that you should slow down the negotiations on the Sterling Mine Road property. We do not want our ability to return the property to be jeopardized." As we reported recently, the Community Benefit Agreement has nearly been finalized with the Town of Ramapo, which will result in the granting of property tax exemption; however, the Design/Build Department will delay submitting a project application to adjust the zoning text.

Based on the above approach, we think that the Ramapo Property can be cared for under our direction through the normal departmental channels, specifically with the Design/Build Department taking the lead with permitting issues and the Real Property Department taking the lead with property tax exemption issues. This would be coordinated with developments at the Tuxedo Park Property and involve close communication as appropriate with the Legal Department and Treasurer's Office.

Summary

It appears to us that the Property Search Group has achieved its objective of locating and acquiring property to develop a new Bethel complex. We deeply appreciate the hard work of these dear brothers. With this vital work accomplished, we generally have the Design/Build Department interfacing with local officials and pressing forward to obtain permits, particularly for the Tuxedo Park Property. We therefore wonder if this is an appropriate time to use our normal departmental procedures for both properties. This could also allow for possibly suspending the activities of the Property Search Group, although the individual brothers themselves will continue to be busy with matters related to both properties through their departments and the various project teams. These include Brother Pollock – Design/Build Department and Tuxedo Park Project Team, Brother Rice – Real Property Department, and Brother Schilling – Maintenance/Construction Department and Tuxedo Park Project Team. Brother Baker will also remain involved through his appointment on the Construction Planning Group, which advises our committee on the coordination of construction-related issues involving the ongoing Wallkill Bethel expansion, proposed Patterson Bethel expansion, and Tuxedo Park project. Of course, we will continue to ensure that our Branch Office continues to provide weekly reports apprising you of progress with these properties.

Thank you for considering this inquiry, and we look forward to your direction.

Your brothers,

{Signed by Leon Weaver, Jr.}

For the U.S. Branch Committee

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 127

**TIME SENSITIVE**

# UNITED STATES BRANCH

BA:DA  July 31, 2009  No. 1361

*Via E-mail*

PUBLISHING COMMITTEE

Re:  Necessary Filing in Warwick

Dear Brothers:

We are writing with a time-sensitive request for your permission to file necessary applications for the development of the former Touro College property in the Town of Warwick, New York. We are preparing the paperwork to begin the approval process, which will likely take more than a year. It will involve the preparation of an Environmental Impact Statement (EIS) as has been done at Wallkill and as is now being submitted at Patterson. The filing fee for the proposed project in Warwick is approximately $45,000. In addition, an escrow account must be established with the Town so that they can pay their consultants during the review process. The escrow normally required for the Town consultants would be nearly $200,000 for a project such as ours. However, the Town has agreed to an escrow of $62,850. The Town will require that we replenish the amount when it dwindles to 40% of the initial deposit for as long as the approval process takes. Attached are requisitions to provide checks for these fees.

In addition to the Town's consultants, we expect that we will need to hire consultants to assist in preparation of plans and portions of the EIS. Although the Design/Build Department will take the lead and coordinate this work, the department is already quite busy preparing the construction plans for Wallkill and the design plans for Patterson. We estimate that the costs for these consultants will be another $200,000.

We are also in the process of obtaining estimates for maintaining the existing buildings on the site as well as providing long-term security. Simultaneously, arrangements are being made to clean up the property and provide some security. Brother Ted Hoffman is coordinating this work under the direction of Brother Richard Devine. They have been working closely with the Property Search Group and various departments at Brooklyn and Wallkill.

Finally, an official title is needed for the project in Warwick. So as to distinguish it from the project we are pursuing slowly in Ramapo, which is called the "Watchtower Administrative Center," we propose that we call the Warwick project something different. Options that have been presented include the "Watchtower World Headquarters" and the "World Headquarters of Jehovah's Witnesses." We favor the latter, since it seems to harmonize with the organization's use of the name "Jehovah's Witnesses," as with the "Christian Congregation of Jehovah's Witnesses" and "Assembly Hall of Jehovah's Witnesses." Either name seems to match the actual

PUBLISHING COMMITTEE
BA:DA  June 31, 2009  No. 1361
Page 2 of 2

intent of our proposal and fits in well with the zoning and expectations of key officials in the Town of Warwick.

In conclusion, we seek your direction concerning initiating the permitting process, which is expected to take at least a year and cost close to $500,000, and selecting a name for the project. This request is time-sensitive in that if we receive your response on or before Friday, August 7, 2009, this will allow us to be on schedule for Warwick's planning board meeting in August. Otherwise, we will likely need to wait until the next month. We look forward to your direction and will continue our efforts to move ahead as quickly as possible.

Your brother,

{Signed by Leon Weaver, Jr.}

Leon Weaver
For the U.S. Branch Committee

Enclosures

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 128

# M E M O R A N D U M

BZH  March 30, 2005

U.S. BRANCH COMMITTEE
c/o William Van De Wall

Re: Property Research

Dear Brothers:

The property search directed by the Governing Body is progressing and we wanted to take this time to provide you with an update. This letter outlines our activities since receiving the assignment and reviews what has been learned so far. We also request direction on retaining legal counsel, property acquisition approaches, and communicating with local government representatives.

Since receiving the assignment, we have familiarized ourselves with the region by visually inspecting promising areas and conducting electronic research. We interviewed some consultants with experience in the target area to obtain their informal observations on property opportunities and challenges. Two legal firms were interviewed to determine their experience in representing not-for-profit organizations in property development issues. Two commercial real estate firms were contacted for assistance. We informed them that we are looking for property for residence and office use. We have not indicated there is any desire to move our headquarters from Brooklyn. The real estate firm of CB Richard Ellis signed a confidentiality agreement and has begun locating properties for review. We are in the process of assessing the properties that have been identified. A confidentiality agreement will be presented to the real estate firm of Cushman & Wakefield next week. We do not anticipate any direct fees from these real estate firms, since their commissions are paid from the proceeds of any property sale.

Of the more than 25 properties which have been reviewed, we have identified eight which may have potential. These are listed in more detail in the attached information sheet and include two properties in Rockland County, five properties in Westchester County, and one in southern Orange County. We have found that, while obtaining property presents challenges, obtaining approvals presents even greater challenges. Any development such as we propose will require approval from a Town Board as well as numerous county and state agencies. We will need to address concerns including loss of open space, traffic, removal of property from the tax roll, and fitting into the overall community plan. There is also community opposition to large projects in the suburban New York area. Some years ago ownership of property implied definite rights as to how a property would be used. That is no longer the case. Any large development in New York State is subject to a State Environmental Quality Review (SEQR) process. This process involves public hearings and reviews by many state and municipal agencies. When sufficient research is omitted, approvals have become so involved and expensive that developers in the region have had to abandon their goals for certain properties. We faced a similar situation with the property we purchased in Kent, New York for construction of a new assembly hall. After purchasing the property, we spent two

years and $500,000 trying to obtain approvals. It became evident that we faced stiff opposition and further delays if we continued our attempt to build an assembly hall on that site. Therefore, two other sites were pursued. One of them was successful and ultimately became the Newburgh Assembly Hall. As a result of this experience, we did not purchase the Newburgh property until we were reasonably sure of obtaining the necessary approvals.

We would now like to request your direction concerning the following:

1. Of the legal firms interviewed we recommend retaining Whiteman, Osterman & Hanna, who have their main offices in Albany. They have extensive experience in property development in our target area and maintain relationships with key government officials.  Although our personnel can do much of the needed work, we recommend hiring the firm as a consultant. They have indicated that their fees could be as high as $800,000 for the entire process, including obtaining necessary approvals and completing the state environmental quality review (SEQR) process. They suggest that additional consultants required during this period may cost an additional $1.2 million. They estimate that once a suitable property has been identified, it could take two or three years to complete the process.

2. We recommend pursuing multiple sites for possible purchase until we are reasonably sure of obtaining approvals on at least one. This may increase our chances of success as well as minimize the time we invest by creating a competition for our presence.

3. In view of our high residential density requirements it may be necessary to assemble several parcels into one development area. This may involve the lease or purchase of an existing office building combining it with nearby residences. Is this acceptable?

4. Since we will need feedback on how each community may view our proposal, we would like to request your approval to contact some of the town supervisors and private property owners directly. As an example, in Orangetown there are two properties, the Mercedes Benz property and the Rockland Psychiatric Center. The Town has requested proposals for one of the properties and has set a deadline of April 29, 2005. Since there may be a connection between the two properties, we will need to discuss our interest in possible development with the supervisor prior to that date.

5. We anticipate that any township in the target area will expect incentives. Payments or other contributions in lieu of taxes will be needed to convince a community of the benefits of our project. There is a need to determine the primary concerns of the community where we anticipate building. We would like your approval to discuss these matters.

U.S. BRANCH COMMITTEE
BZH  March 30, 2005
Page 3 of 3

We are very enthused about the pursuit of property outside of New York City. As you can discern, much is involved and it may take some time to arrive at a recommendation for properties that have the potential to develop as we propose. We look forward to receiving your direction concerning the potential strategies and approaching private parties and government officials concerning some of the properties.   If you would like additional information on these matters we would be pleased to discuss these points more thoroughly.

Your brother,

Daniel Rice
for the Property Search Group

Enclosure

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 129

# MEMORANDUM

BZH  January 18, 2006

U.S. BRANCH COMMITTEE

Dear Brothers:

As requested in the Governing Body letter GLK:AH January 12, 2006 No. 420G, we would like to provide this weekly update concerning the King's College property in southern Orange County, New York.

As you recall, we were informed that the Board of Directors for Touro College may not be fully committed to using the King's College property for their own campus. Since our meeting with you on January 11, our Realtor has had another meeting with his contact on the matter. During this meeting it was verified that Touro College's objective in obtaining the property is to build a new educational campus. Touro College's president, who is well respected both as a businessman and as an educator, appears to be the driving force behind it. While developing the concept for the project, Touro College engaged a partner for some residential development that would be used for students and staff members. That partner is recommending to the Board of Directors that the residential development not be pursued. It is this same partner that has suggested that the Board of Directors might be open to another offer at this time.

Based on this information and your direction, we asked that our Realtor inform the partner that we would be willing to offer $14.5 million to Touro College for the property. The partner said that he will meet with selected members of Touro College's board of directors on Thursday, January 19, 2006. In order for Touro College to open negotiations with us, those board members would probably need to take our offer to their full board of directors. We expect to receive a response after this meeting takes place indicating whether or not Touro College would be willing to enter into negotiations.

Please feel free to contact us if you have any questions. We look forward to seeing how this matter develops.

Your brother,

[signed by Daniel Rice]

Daniel Rice
for the Property Search Group

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 130

# M E M O R A N D U M

RA  January 25, 2006

U.S. BRANCH COMMITTEE

Dear Brothers:

We are pleased to provide our weekly update on the King's College property in southern Orange County, New York.

Our Realtor relayed the $14.5 million offer to the partner who was originally retained by Touro College for residential development on the King's College property. On Thursday, January 19, the partner conveyed our offer to some members of Touro College's Board of Directors. They expressed a willingness to entertain an offer on the property; however, they chose not to directly approach Touro College's president, who appears to be the driving force behind construction of the new campus. Instead, they asked the partner to make the presentation to the president. The board members felt that if the president was willing to consider a sale, they would be willing to support it. It appears that the Board of Directors does not want to openly oppose the president on this matter.

Because Touro College's president was away on Friday, January 20, the partner intended to speak to the president's secretary on Monday, January 23, with the objective of scheduling a face-to-face meeting. As of this afternoon, Wednesday, January 25, we are still awaiting an update concerning this planned meeting.

Thank you for considering this update, and please feel free to contact us if you have any questions as this matter develops.

Your brother,

[signed by Daniel Rice]

Daniel Rice
for the Property Search Group

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 131

RA  February 21, 2006

UNITED STATES BRANCH COMMITTEE
c/o William Van De Wall

Dear Brother Van De Wall,

We would like to provide our weekly update on the King's College property in southern Orange County, New York.

Touro College completed its purchase of the King's College property by closing last Thursday, February 16th. Our Realtor is again expressing our interest to Touro College, and we are awaiting a reply. Of course, we are continuing to actively investigate Sterling Forge Estates, Tuxedo Reserve/International Paper, Arden Homestead, and other properties in the target area.

Thank you for considering this update, and please feel free to contact us if you have any questions.

Your brother,

[signed by Daniel Rice]

Daniel Rice
for the Property Search Group

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 132

RA March 22, 2007

UNITED STATES BRANCH COMMITTEE
c/o William Van De Wall

Dear Brother Van De Wall,

We are writing to provide an update concerning our offer to purchase the Touro College property. In summary, Touro College's board of directors met on Monday, March 19, 2007, thoroughly discussed our offer of $26 million, and voted against accepting it. Our broker said that their refusal should be considered definite because it was based upon their future planned use of the property, not our offer price.

Our broker called on Wednesday, March 21, 2007, to report on his discussion with Touro College's chief financial officer. The chief financial officer was very optimistic going into the meeting, feeling that the offer incorporated everything that he had suggested. He knew that the chairman and two senior directors favored selling the property, and several other directors were leaning towards selling as well. At the meeting, the discussion revolved around the property's importance to Touro College's future objectives. Price was not a consideration, as the board appeared to recognize that the offer was well above the property's market value. The discussion was long and involved, and a number of board members that had been leaning towards selling were swayed away. In the end, the board voted against selling the property. When asked if the refusal was definite, our broker said that nothing was definite, but there would need to be a change in world conditions to make a sale happen.

While we are disappointed by this result, we are satisfied that every effort was made to acquire the property. Touro College appeared to act in good faith, and we feel that the property may become available in coming years if the community rebuffs their ongoing development efforts.

We would also like to report on a beautiful, campus-like property that recently became available in Westchester County. The 76-acre School for the Deaf in the Town of Greenburgh may be available at a cost of approximately $35 million, contingent upon obtaining necessary approvals. We have visited the site and met with the property owners. It has excellent transportation access, and we suggest investigating it further.

Your brother,

*{ Draft 3/21/07 }*

Daniel Rice
for the Property Search Group

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 133



# WATCHTOWER
Bible and Tract Society of New York, Inc.

Real Property Department

25 Columbia Heights, Brooklyn, New York U.S.A. 11201-2483 • Tel: 718.560.5001 • Fax: 718.560.5002
900 Red Mills Road, Wallkill, New York U.S.A. 12589-3223 • Tel: 845.744.1900 • Fax: 845.744.1901

September 10, 2008

Lorterdan Properties
c/o Robert D. Jackson
35 Virginia Avenue
Montclair, NJ 07042-2464

Re: Property in Towns of Ramapo and Tuxedo, New York

Dear Mr. Jackson:

Attached please find two original copies of our letter of intent to purchase from Lorterdan Properties at Ramapo I, LLC, the approximately 248 acres of land and any improvements in the Towns of Ramapo and Tuxedo, New York.

The Watchtower Bible and Tract Society of New York, Inc. is pleased to respectfully submit what we believe reflects an above market price for this property, especially in light of the current economic situation and its impact on debt markets. We are prepared to move forward with this offer because we intend to develop this property for our own use and not as an investment or commercial/residential site.

We look forward to hearing from you. Upon your acceptance, we are prepared to execute a Purchase and Sale Agreement and place our deposit in escrow. We will then conduct our investigation of the property for our proposed intended use, which will include approaching the Town of Ramapo and other political, regulatory, and environmental groups.

We appreciate your consideration of this offer. Please do not hesitate to contact me if you have any questions.

Best regards,

Daniel J. Rice
Watchtower

Enclosures (2)

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# **Document 134**

# WATCHTOWER
### Bible and Tract Society of New York, Inc.

Real Property Department

25 Columbia Heights, Brooklyn, New York U.S.A.  11201–2483 • Tel: 718.560.5001 • Fax: 718.560.5002
900 Red Mills Road, Wallkill, New York U.S.A.  12589–3223 • Tel: 845.744.1900 • Fax: 845.744.1901

September 9, 2008

Lorterdan Properties
c/o Robert D. Jackson
35 Virginia Ave
Montclair, NJ  07042-2464

Re:  Property in Towns of Ramapo and Tuxedo, New York

Dear Mr. Jackson:

This letter of intent ("Letter") is to present the terms under which Watchtower Bible and Tract Society of New York, Inc., ("Purchaser"), proposes to purchase from Lorterdan Properties at Ramapo I, LLC ("Seller") all of the land, buildings, and improvements owned by Seller at the addresses known as 155 Sterling Mine Road, 175 Eagle Valley Road, 199 Table Rock Road, and 25 Table Rock Road, Town of Ramapo, Rockland County, New York, and on Route 72 in the Town of Tuxedo, Orange County, New York.  The proposal is in the form of two alternatives, with the terms of purchase under each alternative as follows:

**Terms Common to Both Alternatives.**

1.      Property.  The Seller owns and is willing to sell approximately two hundred forty-eight (248) acres of land with buildings and other improvements located at the address known as 155 Sterling Mine Road, 175 Eagle Valley Road, 199 Table Rock Road, and 25 Table Rock Road, Town of Ramapo, Rockland County, New York, and on Route 72 in the Town of Tuxedo, Orange County, New York , identified as Town of Ramapo tax parcels Section 38.14, Block 1, Lot 1; Section 38.10, Block 1, Lot 8; Section 838.14, Block 1, Lot 1.1; Section 838.14, Block 1, Lot 1.2, and Town of Tuxedo tax parcel Section 17, Block 1, Lot 19.21 (collectively the "Property").

2.      Title.  At the closing, if one occurs, Seller will convey the Property by Bargain and Sale Deed with Covenant Against Grantor's Acts containing the covenant required by subdivision 5 of Section 13 of the New York State Lien Law.  Seller will convey to Purchaser fee simple title to the Property free and clear of encumbrances except those permitted in the Final Agreement, if any.

3.      Conditions Before Final Agreement.  Immediately upon the full execution of this Letter, Seller shall:

a.      Give to Purchaser full and complete copies of all studies and reports (excluding any appraisals or valuations) (collectively "reports") that Seller has in its possession relating to the Property including, but not limited to, soil and environmental reports

Letter of Intent
Lorterdan Properties at Ramapo I, LLC
September 9, 2008
Page 2

(Phase I and/or Phase II or otherwise), title reports, surveys, traffic studies, utility studies, wetland reports, archeology studies, and any reports referenced in any draft or final Environmental Impact Statement or other document or statement submitted by Seller to any governmental agency or office relating to the Property (except such reports as are confidential or privileged and may not be released by the Seller to any party), and copies of any notices of violations of law.  All such reports are provided by Seller without any representation or warranty, express or implied. (Purchaser will hold such reports provided by the Seller in confidence and only for its use in evaluating the Property); and

b.      Allow Purchaser access to the Property so that Purchaser may begin its evaluation of the Property.  Prior to the Purchaser or Purchaser's agents performing any invasive test on the Property, Purchaser will provide Seller with a policy of general liability insurance from a company reasonably acceptable to Seller in which the Seller (and any other party whose name is furnished to Purchaser) is an additional named insured, which said policy shall be in an amount not less than $1,000,000.00 single limit coverage and property damage in an amount of not less than $500,000.  The Purchaser shall provide the Seller with certificates of Workers' Compensation insurance for any persons and entities for whom such coverage is required and that enter the Property (Seller understands that members of the religious order who work through Purchaser are not subject to Worker's Compensation and that there is no such coverage for them).  In addition the Purchaser shall defend, hold the Seller harmless, and indemnify the Seller against any and all claims made against the Seller arising out of the activities of the Purchaser and Purchaser's agents, contractors, consultants or vendors on the Property which indemnification shall include indemnification for Seller's attorney's fees resulting from such claim or claims.  The Purchaser will provide written notice to the Seller of its intention or the intention of any of its consultants to enter onto the Property at least one (1) business day prior to such entrance.

To the extent any studies, reports or documents referenced in subparagraph 4(a) above require governmental or other consent to provide the same to Purchaser, Seller shall cooperate (at no cost to Seller) with Purchaser in efforts to obtain such consent.  Additionally, Seller agrees that Purchaser shall be able to use any such information provided by Seller in Purchaser's discussions with governmental agencies (federal, state, or local) and quasi-governmental officials and entities and with environmental and private interest groups.

4.      Exclusivity.  Seller hereby covenants and agrees that it shall not enter into any agreement to sell the Property to any party during the forty-five (45) days immediately following the date of Seller's signing this Letter ("Exclusive Period").  In the event that a Final Agreement is not concluded within the Exclusive Period, Seller shall thereafter be free to enter into any agreement it chooses with respect to the Property.  This Paragraph 4 is binding on the Seller whether or not a Final Agreement is ultimately reached between the parties.  Nothing herein shall prevent Seller from negotiating for the sale of or discussing the Property with another potential purchaser, subject to the provisions of Paragraphs 4 and 8 of this Letter.

Letter of Intent
Lorterdan Properties at Ramapo I, LLC
September 9, 2008
Page 3

     5.    <u>Letter is Non-Binding</u>.  This Letter is an expression of intent only (and, when Seller indicates its approval of this Letter, may be called a Memorandum of Understanding), is not a binding agreement (except as provided in and as pertains exclusively to Paragraphs 4, 8, and 9), and is only an expression of the basic terms and conditions to be incorporated in a Final Agreement if one is entered into.  This letter does not obligate either party to proceed to the completion of a Final Agreement or to negotiate the terms of a Final Agreement.  Except as expressly set forth herein, neither party has any obligation to the other until both execute a Final Agreement, which must be satisfactory in form and substance to Purchaser and Seller and their respective counsel.  The terms of this Letter shall be superseded by the terms and conditions of the Final Agreement.  When the Final Agreement is signed or at the end of the Exclusive Period, whichever occurs first, this Letter shall have no legal effect and the terms hereof shall not be used as evidence in any claim or lawsuit between the Purchaser and Seller.

     6.    <u>Assignability.</u>  The Parties acknowledges that this Letter is non-assignable.  However, Purchaser may designate another legal entity used by Jehovah's Witnesses to be the Purchaser in the Final Agreement.

     7.    <u>Broker</u>.  Purchaser represents to Seller that it has not retained or commissioned any broker, finder, real estate agent, or other similar person (collectively "Agent") in connection with the transaction contemplated by this.  Seller represents to Purchaser that, except for David J. Gold, doing business as Country Homes & Estates LLC, Seller has not retained or commissioned any broker, finder, real estate agent, or other similar person (collectively "Agent") in connection with the transaction contemplated by this Letter and that Seller alone shall be responsible for any fees, commissions, or other compensation due to David J. Gold, doing business as Country Homes & Estates LLC or its/their brokers, employees, or agents, if the transaction contemplated by this Letter is ultimately concluded.  Purchaser agrees that it will indemnify, defend, and hold the Seller free and harmless from the claims of any Agent for fees, commissions, or other compensation in connection with representing Purchaser regarding this Letter or the purchase of the Property.  Seller agrees that it will indemnify, defend, and hold the Purchaser free and harmless from the claims of any Agent for fees, commissions, or other compensation in connection with representing Seller regarding this Letter or the purchase and sale of the Property.

     8.    <u>Confidentiality</u>  Except as required by law, both parties will keep confidential the existence and terms of this Letter, except that each may disclose the same to their respective attorneys and consultants, so long as those also agree to this confidentiality provision, and except that Purchaser may disclose the existence and, if necessary, the terms (except financial terms) of this Letter to government and quasi-government officials and entities and environmental and private interest groups for the purpose of assessing their potential support or opposition to Purchaser's proposed use of the Property.  Seller shall not disclose, allude to, or reveal the identity or name of Purchaser.  Seller understands, consents, and agrees that Purchaser is permitted to freely discuss its proposed project and the Property with all governmental and quasi-governmental officials and entities that have regulatory involvement or jurisdiction over the Property or Purchaser's intended project and with environmental and private interest groups.

Letter of Intent
Lorterdan Properties at Ramapo I, LLC
September 9, 2008
Page 4

This Paragraph 8 titled "Confidentiality" is binding on the Purchaser and Seller and their respective directors, officers, employees, and agents whether or not a Final Agreement is ultimately reached between the parties.

      9.    Authorized Signatory. The Purchaser and the Seller represent to each other that the individual executing this Letter is duly authorized to do so by their respective entities.

      10.    Time of the Essence. Time of the essence is applicable to all time periods and dates in this Letter and in any Final Agreement.

### Purchase Alternative #1.

      1.    Purchase Price. The Purchase Price is Twenty-eight Million and No/100 Dollars ($28,000,000.00) ("Purchase Price"). If a mutually acceptable Purchase and Sale Agreement between the Purchaser and Seller ("Final Agreement") is executed, it will require the Purchaser to deposit in escrow the sum of One Million Four Hundred Thousand Dollars ($1,400,000.00) as a "Deposit." The Deposit will be credited to the Purchase Price at the closing of the transaction. Portions of the Deposit will become non-refundable as follows:

- $500,000.00 at the end of 90 days after the effective date of the Final Agreement;

- $300,000.00 upon the Lead Agency's acceptance of the Draft Environmental Impact Statement;

- $300,000.00 upon Purchaser's receipt of the Lead Agency's SEQRA Findings Statement;

- $300,000.00 at the end of 90 days after Purchaser's receipt of the Lead Agency's SEQRA Findings Statement.

Any interest on the Deposit will be the Purchaser's and may be applied to the Purchase Price. The Deposit, or the remaining portions thereof, will be returned to the Purchaser if the transaction does not close, unless it does not close because of Purchaser's default under the Final Agreement. The balance of the Purchase Price will be paid in full by certified or cashier's check or wire transfer. The Final Agreement will not contain any financing contingency.

      2.    Contingencies in Final Agreement. Purchaser's obligation to purchase the Property shall be contingent upon the following, which will be included as contingencies in the Final Agreement:

      a.    Purchaser being satisfied with the Property. Purchaser shall have ninety (90) days from the date of the Final Agreement within which to perform its due diligence, including environmental assessments of the Property ("Due Diligence Period"). Before the expiration of the Due Diligence Period, the Purchaser, in its sole discretion, may terminate the Final Agreement at which time the Deposit and any interest thereon will be distributed to the Purchaser.

Letter of Intent
Lorterdan Properties at Ramapo I, LLC
September 9, 2008
Page 5

      b.    Purchaser receiving all governmental and regulatory approvals, including final site plan approval, necessary for the construction of its proposed project on the Property ("Approvals"). If such approvals are not received within twenty-four (24) months from the effective date of the Final Agreement ("Approval Period"), then Purchaser may extend the Approval Period for another 30 days. If such approvals are not received by the end of the extended Approval Period, then Purchaser may elect to (i) terminate the Final Agreement, in which case the remaining portion of the Deposit, if any, and any interest accrued on the Deposit, shall be distributed to Purchaser, or (ii) proceed with the closing of the transaction.

    3.    Closing. The closing of the transaction will take place within thirty (30) days of the later occurring of (i) the date that Purchaser has received the Approvals and (ii) Purchaser elects to proceed with the closing.

**Purchase Alternative #2.**

    1.    Purchase Price. The Purchase Price is Twenty Million and No/100 Dollars ($20,000,000.00) ("Purchase Price"). If a mutually acceptable Purchase and Sale Agreement between the Purchaser and Seller ("Final Agreement") is executed, it will require the Purchaser to deposit in escrow the sum of Five Hundred Thousand Dollars ($500,000.00) as a "Deposit." The Deposit will be credited to the Purchase Price at the closing of the transaction. Any interest on the Deposit will be the Purchaser's and may be applied to the Purchase Price. The balance of the Purchase Price will be paid in full by certified or cashier's check or wire transfer at the Closing. If the transaction does not close, unless it does not close because of Purchaser's election to terminate within the Due Diligence Period (as defined below) or of Seller's default under the Final Agreement, the Deposit and any interest earned thereon will be distributed to the Seller as liquidated damages. The Final Agreement will not contain any financing contingency.

    2.    Contingency in Final Agreement. Purchaser's obligation to purchase the Property shall be contingent upon Purchaser being satisfied with the Property. Purchaser shall have ninety (90) days from the date of the Final Agreement within which to perform its due diligence, including environmental assessments of the Property ("Due Diligence Period"). Before the expiration of the Due Diligence Period, the Purchaser, in its sole discretion, may terminate the Final Agreement at which time the Deposit and any interest thereon will be distributed to the Purchaser. This contingency will be included as a contingency in the Final Agreement.

    3.    Closing. The closing of the transaction will take place within one (1) year of the date that a mutually acceptable Purchase and Sale Agreement is executed.

    If the foregoing terms meet with your approval, please so indicate by signing two (2) originals of this Letter in the place indicated below and return one original to the undersigned.

Letter of Intent
Lorterdan Properties at Ramapo I, LLC
September 9, 2008
Page 6

Thereafter, we will direct our legal counsel to prepare and forward to you a proposed Purchase and Sale Agreement.

Sincerely,

Max Larson, President
Watchtower Bible and Tract Society
of New York, Inc.

Alternative #__ is accepted this ____ day of September 2008 on behalf of Lorterdan Properties.

_____
Robert D. Jackson, [President/Manager/Managing Partner]

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 135

### *WORLD HEADQUARTERS OF JEHOVAH'S WITNESSES*

25 Columbia Heights, Brooklyn, NY 11201-2483 • Tel. 718 560-5000

GAX:AH   November 20, 2008   No. 403G

Via E-Mail

Branch Committee
UNITED STATES

    Re:    Ongoing Property Search

Dear Brothers:

    At our Governing Body meeting on November 19, 2008, we met with two representatives of your Branch Committee, Brothers Kikot and Schilling.  Brothers Pollock and Rice also joined our meeting. We discussed the fact that the Touro group has reconsidered and it appears they are willing to sell their property, and their CEO has agreed to meet with you on Monday, November 24. You inquire as to whether we have interest in this property. We are pleased to provide the following direction.

    We approve of your meeting the CEO, however with the stipulation that, while we are interested in the property, given the financial situation as it is now, our offer will be $23,500,000, and we will need 120 days to get to closing rather than the 90 days that was mentioned. However, we want you to know that you are authorized to offer a maximum of $25,000,000 to the CEO of the Touro group. We will be praying in your behalf, and we look for Jehovah to direct our steps in the matter of finding a suitable property.—Jeremiah 10:23.

    With warm Christian love,

                Your brothers,

                Governing Body

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 136

# WORLD HEADQUARTERS OF JEHOVAH'S WITNESSES

25 Columbia Heights, Brooklyn, NY 11201-2483 • Tel. 718 560-5000

GAX:AH   February 11, 2009   No. 748G

Via E-Mail

Branch Committee
UNITED STATES

      Re:    Property Search

Dear Brothers:

We appreciated having had the opportunity to meet with some of you brothers as well as brothers on the Property Search Group.

We approve of your immediately informing the sellers that we are considering both properties. Also, we look forward to reviewing the draft of a press release and an announcement to the Bethel family.

May Jehovah continue to guide and direct matters involving

                                   Your brothers,

                                   Governing Body

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 137

# *WORLD HEADQUARTERS OF JEHOVAH'S WITNESSES*

25 Columbia Heights, Brooklyn, NY 11201-2483 • Tel. 718 560-5000

GAX:AH   July 22, 2009   No. 1432G

Via E-Mail

Branch Committee
UNITED STATES

     Re:    Property Search Update for July 8 - 14, 2009

Dear Brothers:

     We appreciated receiving your letters BA:BK July 16, No. 1301, and BG:BW July 17, No. 1311.

     Your question about whether the Property Search Group should continue pursuing additional properties was considered by us at our meeting today. We do not want them to pursue additional property actively, but instead they should focus their efforts on getting permits to develop the Touro property especially. However, if an additional property comes to their attention that has excellent potential they may inform us accordingly.

     We pray for Jehovah's direction to continue with regard to the property matters.

                        Your brothers,

                        Governing Body

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 138

**WORLD HEADQUARTERS OF JEHOVAH'S WITNESSES**

25 Columbia Heights, Brooklyn, NY 11201-2483 • Tel. 718 560-5000

GAX:AG   August 4, 2009   No. 1481P

Via E-Mail

# Time Sensitive

Branch Committee
UNITED STATES

      Re:    Necessary Filing in Warwick

Dear Brothers:

      We received your letter BA:DA July 31, 2009, No. 1361, regarding the above-referenced matter.

      The requisitions you enclosed are signed and returned herewith.

      As to the title to use for the project in Warwick, it should be "World Headquarters of Jehovah's Witnesses."

      Please be assured of our warm Christian love and best wishes.

                       Your brothers,

                       Publishing Committee

Enclosures

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 139

# PROPERTY SEARCH GROUP – MEETING MINUTES

MM 2008 09 22 Negotiation                                                                     Printed 10/22/2012

| | |
|---|---|
| Date & Time: | Monday, September 22, 2008 at the WKL B Res 3rd flr Cfrm from 8:45 AM to 12:00 PM |
| Attendees: | Daniel Rice |
| Other: | David Gold (Broker), Robert Jackson (Principal) |

**Subject:** **Negotiation concerning Lorterdan / Sterling Mine Road Property**

## I.   BACKGROUND

R. Jackson and D. Gold traveled to Wallkill Bethel to discuss the offer of September 9, 2008.

## II.   CURRENT SITUATION

R. Jackson expressed the following: (a) his subdivision plat has been filed as Ramapo approved project No. 8008, and development of can begin upon providing a $250,000 bond, (b) his debt is $9-10 million (though our research estimates that he has $6.875 million in debt on the property), (c) his carrying cost is $1 million per year of which $300,000 is school and town taxes (and D. Rice expressly informed him that we will not pay his carrying cost), (d) his debt is due on October 1, 2008, and he expects to be able to refinance, but if he cannot do this, he will threaten to tie up the property for several years by filing to reorganize under Chapter 11 bankruptcy provisions, and (e) Open Space groups would pay him $10 million for the property.

## III.   OUR OFFER

R. Jackson discussed our offers and proposed several counteroffers.

### A.   Watchtower Offer Alternative #1 - $28 million price, $1.4 million deposit with four milestones, close within two years.

R. Jackson proposed several alternatives based on this option.

1.  Proposal #1A – Date-based deposits totaling $1 million.
He requested deposits of $500,000 at the 90 day and 12 month dates. He would use the deposit to obtain a two-year, $10 million loan at 1.5% over the prime lending rate of 5.0%, with an initial payment of $500,000. There would be no other payments and interest would accrue until the full loan became due in two years.

2.  Proposal #1B – Increase the deposit to $1.8 million with additional milestones
R. Jackson expressed concern with a scenario where the approval process is rapid, with the findings statement being issued within 16 months or so. After we paid the $1.4 million deposit, we could continue to progress through the other approvals for the remaining 8 months while he would be losing money based on his carrying cost of $1 million per year. He therefore wanted an additional $200,000 milestone for zoning approval and a $200,000 milestone for sketch plat approval.

### B.   Watchtower Offer Alternative #2 - $20 million price, $500,000 deposit, close within one year.

R. Jackson declined this option outright; however, given the current financial climate, it seems that if this were our only offer, he very well might accept it.

### C.  R. Jackson Proposal #3 – Purchase and buyback

R. Jackson proposed that we purchase the property now for $28 million, where $10 million is paid in cash and we give him a promissory note for the balance. In two years, if we are confident that we can develop, we pay the remaining $18 million and keep the property. If we are not confident, then we sell the property back to him for $10 million and retraction of the promissory note. If he cannot buy the property back, the promissory note is released and we own the property.

In analyzing this offer, if we pay $10 million up front, this should be discounted from the total purchase price, reducing it to $26 million or less. We could reduce the carrying cost of $1 million per year by avoiding the cost of financing and applying for tax exemption immediately after submitting our plans for the property.

## IV.  OVERVIEW

The following tables summarize R. Jackson's counteroffers.

| R. Jackson Proposal #1A | | | |
|---|---|---|---|
| *90 Days* | *Year One* | *Year Two* | *90 Days* |
| Free Due Diligence Period | $500K Non-refundable deposit at beginning of year | $500K Non-refundable deposit at beginning of year | Escrow Period |

| R. Jackson Proposal #1B | | | |
|---|---|---|---|
| *90 Days* | *Year One* | *Year Two* | *90 Days* |
| Free Due Diligence Period | $1.8M deposit attached to six milestones at the following amounts: $500k, $300k, $300k, $300k, $200k, $200k | | Escrow Period |

| R. Jackson Proposal #3 | | |
|---|---|---|
| *90 Days* | *Year One* | *Year Two* |
| Free Due Diligence Period | Purchase the property immediately for $10M cash plus a promissory note due at two years. At two years, (a) If we purchase, we pay the promissory note, (b) if we sell, he pays us $10 million to get the property back and releases the promissory note, (c) if he can't buy, he releases the promissory note and we retain the property. | |

## V.  FOLLOW-UP

The property search group needs to review and discuss the various options in preparation for a counteroffer.