Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 140

# PROPERTY SEARCH GROUP – MEETING MINUTES

MM 2009 01 26 Project introduction to Town of Ramapo                    Printed 10/22/2012

| | |
|---|---|
| Date & Time: | Monday, January 26, 2009 at the Town of Ramapo Town Hall, Mayor's Office, 237 Route 59; Suffern, NY 10901, 10:00 AM to 11:15 AM |
| Watchtower: | Jeff Baker, Robert Pollock, Daniel Rice, Kris Van Tassel |
| Ramapo: | Christopher P. St. Lawrence (Town Supervisor), Alan Berman (First Deputy Town Attorney), Alan Simon (Director of Planning and Zoning Administration), N. Aaron Troodler |
| Other: | David Gold (Broker), Robert Jackson (Principal) |

| | |
|---|---|
| **Subject:** | **Sterling Mine Road/Lorterdan – Introduction to Town of Ramapo** |

## I.   BACKGROUND

Robert Jackson scheduled this follow-up meeting with Christopher St. Lawrence to discuss our proposed use of the Sterling Mine Road property.

## II.   DISCUSSION WITH SUPERVISOR

### A.   Explanation of proposed project

C. St. Lawrence was familiar with the 292 acre size of the property, and R. Jackson explained that his project used 92 acres, while ours would be less intensive, using only 52 acres. C. St. Lawrence mentioned the Rockland County Drainage Agency, New York State Department of Environmental Conservation, intermittent streams, vernal pools, and opening the project up to review again. He said that while our proposed project seemed less intrusive, any opposition has already been organized.

### B.   Recent discussions with Sisters Servants of Mary Immaculate

C. St. Lawrence mentioned hearing of discussions by the Sunshine Church with Sister Yakomovich (sp?). R. Jackson described them as a church from California that also considered buying 50-60 of his units for their people. He never considered their offer serious. The Sisters Servants of Mary Immaculate were opposed to any offsite traffic going through their property.

## III.   DISCUSSION WITH SUPERVISOR AND STAFF

### A.   Submittal

A. Simon suggested that the following items be submitted as soon as possible for review by the CDRC:

(1) narrative addressing drainage/zero runoff, erosion control measures, emergency vehicle access including to the courtyards, fire protection water supply (sprinkler pressure, avoiding freezing, etc.), blasting, sewers, water, and a description of how much property is left open. If a narrative is provided next week, it can be reviewed the following week. In January 2008, a new town law became effective increasing the road widths for fire trucks. (According to A. Simon, one of the most important reviews is by his fire inspector, Tom Buckley, who is also the former Village of Sloatsburg fire chief.)

(2) map overlay showing the proposed development on the existing approved site plan,

(3) application fee of $300 and separate escrow check for $3,500 payable to the Town of Ramapo

(4) completed application.

PROPERTY SEARCH GROUP – MEETING MINUTES

**B. Strategy**

1. Zoning

A. Berman noted that the RSH zoning does not allow a campus use. A. Simon suggested seeking variances rather than anything involving adult student use. The town is involved in a lawsuit concerning adult student use. They would also be interested in reviewing the zoning codes in other municipalities that allow our type of development.

2. Opposition groups

Opposition was noted from the New York-New Jersey Trail Conference and Patsy Waters

3. Taxes

A. Simon suggested a five year process where the taxes decline each year by 20%, reaching zero after five years.

4. Introductions

A. Simon suggested that it may be worthwhile to visit our facility at Patterson.

**C. Lorterdan's commitments**

Apparently Lorterdan promised the Village of Sloatsburg a new fire truck in exchange for the approvals. A typical new fire truck would cost $700,000. This is described in the FEIS. Lorterdan already provided a 40 acre property to the town as open space. The property is in Rockland County Sewer District No. 1. The Department of Health wanted a new wastewater treatment plant built nearby rather than routing the lines to the existing Orangeburg plant in order to recharge the aquifer.

☐   **01/26 #1 ....... R. Jackson to provide FEIS Volume 2, Findings Statement, all other approvals, and recommendations on his consultants to R. Pollock.**

## IV. OTHER OBSERVATIONS

**A. Town of Ramapo**

There is a strong Orthodox Jewish influence in the area. The group meeting with C. St. Lawrence before us consisted entirely of Orthodox Jews.

**B. Christopher P. St. Lawrence**

Before our meeting, he discussed his management method of "unlimited sick time" for the 126 police officers to eliminate the need for a lump sum payment at retirement. He lamented increasing property taxes to fully fund pensions and commented that with the current economic situation, "there is a social upheaval that we don't know how to deal with."  the 292 acre project and that 200 acres was set aside for senior housing

**C. Alan Simon**

He mentioned that the planning board has a poor attendance record. The CDRC meetings are held on Wednesday and would be the forum to introduce the project.

**D. Alan Berman**

He was introduced as the author of the current zoning code.

### E.   Community Design Review Committee (CDRC)

The CDRC is an advisory body to the town board. It includes A. Simon, A. Trooler, A. Berman, John Lange of Frederick P. Clark Associates.

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 141

In the Matter of the Application of
Lorterdan Properties at Ramapo I, LLC

TOWN OF RAMAPO
TOWN CLERK'S OFFICE

2005 OCT 14  AM 10: 00

For Final Subdivision Approval
on a plat entitled:

**DECISION**

Sterling Mine Road Active Adult Community

The Planning Board of the Town of Ramapo, at a meeting held at Ramapo Town Hall, 237 Route 59, Suffern, New York, on October 11, 2005, commencing at 8:15 p.m., at which time and place the following members were:

Present and voting AYE:  Sylvain Klein, Bracha Gobioff, Dora Green, Walter Brightman, Richard Stone and John Brunson

Present and voting NO:  Joseph Burdige

Absent:

The following resolution was moved by Walter Brightman, seconded by Richard Stone and carried 6-1.

**WHEREAS**, an application has been filed by Lorterdan Properties at Ramapo I, LLC, requesting final subdivision approval for a subdivision entitled Sterling Mine Road Active Adult Community located on the south side of Sterling Mine Road, 100 feet east of Eagle Valley Road and identified on the Tax Map as 34:14-1-1 and 38:10-1-3; and

**WHEREAS**, said application seeks 293 lots, consisting of 292 homestead lots and one common elements lot, for an active adult housing project; and

**WHEREAS**, pursuant to the regulations promulgated under the State Environmental Quality Review Act, the project received a positive declaration from this Board, as Lead Agency, and in response thereto a scoping outline, Draft Environmental Impact Statement, Final Environmental Impact Statement and Findings were prepared and adopted by this Board; and

**WHEREAS**, said environmental review found that the project would have no significant impact, or that impacts were minimized or avoided to the maximum extent practicable, with respect to various areas of environmental concern, including but not limited to, visual impacts, traffic, drainage, preservation of open space, steep slopes and topography, local plant and wildlife, wetlands, water supply, sanitary sewers, public utility services, schools, community services, emergency services, solid waste collection and disposal, historical and archaeological resources, and social and economic impacts; and

**WHEREAS**, said Findings were adopted by this Board on March 15, 2005; and

**WHEREAS**, based upon the foregoing environmental review, and consistent with the Comprehensive Plan previously adopted by the Town in January 2004, the Town Board changed the zoning for the project area to RSH, granted the applicant a special permit for active adult housing, and declared the project area to be an open development area pursuant to section 280-a(4) of the Town Law; and

**WHEREAS**, sketch plat approval of the proposed subdivision was granted by this Board on July 12, 2005; and

**WHEREAS**, preliminary approval of the proposed subdivision was granted by this Board, after a duly noticed public hearing, on July 12, 2005; and

**WHEREAS**, a duly noticed public hearing with respect to final approval of the proposed subdivision was held and closed on September 13, 2005; and

**WHEREAS**, the subdivision, as proposed for final approval, provides for the creation of 292 lots for active adult housing plus one lot to be used as common elements for a homeowners association which will maintain the project area; and

**WHEREAS**, the entire project area consists of 292 acres of land, which includes approximately 252 acres owned wholly by the applicants and a one-half undivided interest in an approximately 40 acre parcel known as the "Boynton Property"; and

**WHEREAS**, of the 292 acres of land, approximately 200 acres (including the Boynton Property) will remain undisturbed and in their natural state; and

**WHEREAS**, the applicant has agreed to dedicate to the Town of Ramapo, without consideration, its undivided one-half interest in the Boynton Property; and

**WHEREAS**, the project avoids the disturbance of all wetlands and vernal pools in the 292 acre project area, with the exception of 0.032 acres which will be crossed by a road; and

**WHEREAS**, the applicant has agreed to provide a conservation easement to the Town of Ramapo over those portions of the rears of proposed lots 57A, 57B, and 58, which intrude into the 100 foot buffer area of NYSDEC wetland SL-8; and

**WHEREAS**, buildings in the project will be restricted in their colors and building materials to minimize the visual impact of the buildings, all as set forth in the FEIS and Findings; and

**WHEREAS**, the project conforms to the requirements of the Sterling Mine Road Scenic Road District by minimizing disturbance of the existing landscape within 1000 feet of Sterling Mine Road, and, where the landscape is disturbed within that area, by mitigating the visual impact of such disturbance; and

**WHEREAS**, the project will be connected to the proposed extension of public sanitary sewers owned by Rockland County Sewer District No. 1; and

**WHEREAS**, the project will be served by the public water system operated by United Water New York, which has advised this Board of its ability and willingness to provide water for consumption and fire protection; and

**WHEREAS**, the project will also include a new water standpipe which will insure adequate water pressure for both consumption and fire protection; and

**WHEREAS**, the applicant has petitioned the Town Board to extend the boundaries of Ramapo Fire Protection District No. 2; and

**WHEREAS**, the applicant has agreed to contribute the sum of $700,000.00 to Ramapo Fire Protection District No. 2, so that said fire protection district can purchase additional equipment to fight fires in the project; and

**WHEREAS**, pursuant to the requirements of the special permit issued for this project, the applicant has eliminated former Road G and relocated lots affected by such road elimination, which will reduce the amount of impervious surface and help to further mitigate the visual impact of the project; and

**WHEREAS**, in response to concerns raised by this Board, the applicant has added an emergency access road in the easterly portion of project area, which road is physically separated from the main subdivision entry road at Sterling Mine Road by a distance of approximately 850 feet; and

**WHEREAS**, in response to concerns raised by this Board and by others, the applicant has moved buildings from the ridgeline of the project area and has moved the proposed water standpipe to a point below the said ridgeline; and

**WHEREAS**, pursuant to the requirements of the preliminary approval granted to the subdivision, the applicant has upgraded the westerly emergency access road to an interior circulation road to improve internal traffic flow and safety; and

**WHEREAS**, this Board has reviewed the Community Design Review Committee report and the report of the Department of Public Works for the above application.

**NOW, THEREFORE, BE IT RESOLVED** by the Planning Board that the application for final subdivision approval is hereby

(1) granted, based on map dated July 21, 2005, subject to the following:
    (a) C.D.R.C. report dated August 3, 2005
    (b) D.P.W. report dated August 31, 2005
    (c) Conditions of the Special Permit granted by the Town Board for active adult housing

(d) Payment to the Town of "money in lieu of land" prior to the issuance of the first building permit for the project

(e) Prior to issuance of first building permit, Ramapo Fire Protection District No. 2 must be extended by the Town Board to include subdivision

(f) Prior to issuance of blasting permit, applicant shall certify to Ramapo Fire Inspector that no perchlorate will be used on site during any blasting

The Chairman declared the Resolution carried and the application granted.

The Director of Building, Zoning and Planning was directed to file this decision and notify the applicant accordingly.

_____                    Dated:  October 12, 2005
Chairman

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 142

**From:** Moake, Richard
**Sent:** Saturday, March 28, 2009 2:35 PM
**To:** Rice, Daniel; Pollock, Robert Jr.
**Cc:** Schilling, Lon; 'Jeffrey S. Baker'; Van Tassel, Kris
**Subject:** RE: Message from Mayor Wright

Brothers,

When I turned on my cell phone this morning, there was a
voice mail message from Mayor Wright--he apparently called
me on Thursday.  I have not returned the call.  Since he has
contacted me twice, I suppose I should respond in some way
on Monday.

*Richard Moake*
Legal Department

**From:** Rice, Daniel
**Sent:** Saturday, March 28, 2009 2:32 PM
**To:** Pollock, Robert Jr.; Moake, Richard
**Cc:** Schilling, Lon; 'Jeffrey S. Baker'; Van Tassel, Kris
**Subject:** RE: Message from Mayor Wright

Rick and Bob,

It is likely that Mayor Wright wishes to start a dialog that will result in an
equipment contribution, especially since the Journal News of March 26th said
"Watchtower was prepared to donate to the fire district to pay for equipment purchases."
Since we supposedly said this, and on the same day the mayor asks to meet with us "and
welcome us to the community", I think we should meet with him in the near future to
begin a relationship.

Before doing so, it would be good to have a further conversation with Robert
Jackson. When I mentioned to him that we received a letter from the mayor, Robert
reacted negatively, expressing that he thought that was inappropriate for the mayor to
send it. Perhaps also, we could get a read from someone within the Town of Ramapo to
get their take on what we can expect. In doing so we could explore the background before
meeting with the mayor so that we can proceed with knowledge.

We have always heard that Sloatsburg, and the people in the village, have given a
lot of there input even though they do not have municipal jurisdiction. I would think that
it is better to engage then in dialog to hear what their concerns are, if any.

Dan

**From:** Pollock, Robert Jr.
**Sent:** Friday, March 27, 2009 1:37 PM
**To:** Moake, Richard; Rice, Daniel
**Subject:** RE: Message from Mayor Wright

I would wait for Dan's input before responding.

My response would be to say we look forward to meeting with him and with representatives of the Fire Department. However we are trying to get before the Town Board in Ramapo right now to see if they agree with our general use of the property. If they do, we can refine our design more so as to have a more meaningful discussion with the Fire Department. Right now we are concerned our sketches are so preliminary that a review could be a waste of their valuable time.

Thanks,
RaP

**From:** Moake, Richard
**Sent:** Friday, March 27, 2009 10:58 AM
**To:** Rice, Daniel; Pollock, Robert Jr.
**Subject:** FW: Message from Mayor Wright

Brothers,

I received the message below.  Any suggested reply?  Somehow my name and e-mail address have been given to some local officials, which is why I am getting these messages.

*Richard Moake*
Legal Department

**From:** Regina Boorom [mailto:ReginaBoorom@sloatsburgny.com]
**Sent:** Friday, March 27, 2009 10:53 AM
**To:** Moake, Richard
**Subject:**

I would be delighted to meet with you and welcome you to the community.  There are many issues of mutual concern not just firematic but others that could be beneficial to discuss.

Mayor Carl Wright

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# **Document 143**

# 𝔙𝔦𝔩𝔩𝔞𝔤𝔢 𝔬𝔣 𝔖𝔩𝔬𝔞𝔱𝔰𝔟𝔲𝔯𝔤

Incorporated October 7, 1929
96 ORANGE TURNPIKE
SLOATSBURG, NEW YORK 10974
—
(845) 753-2727
Fax: (845) 753-2730

March 26, 2009

Mr. Richard D. Moake, Associate General Counsel
Watchtower Bible & Tract Society of NY, Inc.
25 Columbia Heights
Brooklyn, NY   11201

Dear Mr. Moake:

The Village of Sloatsburg has just learned that the Watchtower Bible & Tract
Society of NY, Inc. has purchased a large tract of land located outside of our Village
limits on Sterling Mine Road.  However, it is located within a fire district that is
protected by the Sloatsburg Volunteer Fire Department.

A development of this scope and nature raises many issues of public safety.  Our
Fire Department is made up of dedicated, competent and courageous individuals.
Many hours are spent each week in training in order to protect the residents of our
area.  The members of the Department are well experienced and highly qualified.

Because of the nature of your project, many fire issues must be resolved.  I am
hopeful that the Town of Ramapo, Village officials, Fire Department officers and
representatives from the Watchtower Bible and Tract Society of NY will be able to
meet at the earliest possible time.

I am confident that all of us working together will enhance the quality of life of the
area and ensure the safety of the residents.

I am looking forward with much anticipation to meeting with you or your
representatives.

Very truly yours,

Carl S. Wright
Mayor

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 144

**Lorterdan Property**
We have been investigating a property of approximatel
corner of Rockland County off of County Route 72. Th                    ne
mile closer to Route 17 than the Touro property that m                  ire
parcel is wooded and in places has rugged terrain.

*from C [handwritten notations] Follo file*

The present owners are just completing their approval process to develop a large portion
of the property for 292 units of housing for persons 55 and over. The New York State
Department of Environmental Conservation has given approval to develop the site, and
water and sewer services have been allocated for the site, sufficient for a development for
our use of 800-850 persons. Due to the change in the economy the owners have indicated
a willingness to sell the property for our proposed use. The Property Search Group had an
initial meeting with the Town Supervisor. The Supervisor noted that some contribution to
the Town would likely be needed in lieu of taxes, but that he could see no objection to
our use of the property. He indicated that this is an environmentally sensitive area, and
that our use would require significantly less land dedicated to development and that
would be in our favor. The property is presently zoned for residential or age restricted
housing use only. A more detailed review will have to be conducted with the Town to
determine whether our use could be permitted with a rezoning or a Special Use Permit.

The asking price for the property is $31 million, although we believe the owners will be
open to an offer significantly below that. However, the owners have $10 million of debt
on the property that they need to clear up. Therefore they have indicated a need to close
before the end of the calendar year. Although their may be a good indication that our use
on the property is likely to be accepted or not prior to the end of the year, there is little
hope that we could have any approvals in hand until well after that time. Nevertheless, if
you would like more information on the property the Property Search Group can make a
presentation to you outlining more details of the property and an example of how
buildings could be placed on the site.

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 145

# MEMORANDUM

DA  October 9, 2009

Via E-Mail

U.S. BRANCH COMMITTEE
c/o Harold L. Corkern

Re: Approval for agreement/payment to Town of Ramapo

Dear Brothers:

Please find enclosed a copy of the Community Benefit Agreement (CBA) that has been deemed acceptable by the Property Search Group and representatives of the US Legal Department, and which has been accepted by the Town of Ramapo. You will note that the key terms of the agreement have been highlighted. These were approved by the Governing Body in their Letter GAX:AH August 27, 2009 No. 1555G, which responded to the Property Search Group's memorandum RA:MCT August 26, 2009 to your committee, which was in turn submitted to them (both are enclosed for your reference).

Yesterday the Town Attorney informed our attorney that they would like to be able to report at their Town Board Meeting on Wednesday, October 14, 2009 that the agreement has been approved and that the stipulations of the resolution to our tax case have been agreed to. The Legal Department is preparing the documentation regarding the resolution of the tax case and will be working with the Town Attorney to resolve those matters. To that end, we would like your approval for Brother Larson to sign the CBA and have it faxed to our attorney. Please note that the CBA states that the initial $300,000 payment will be due within 15 days after signing the agreement. Therefore we are including a requisition for a check for that amount payable to the Town of Ramapo.

We look forward to your direction on this matter.

Your brother,


Robert A. Pollock
for the Property Search Group

Enclosures

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 146



# LORTERDAN PROPERTIES

October 2, 2008

**VIA ELECTRONIC MAIL**
Mr. Max Larson
President
Watchtower Bible and Tract Society of New York, Inc.
25 Columbia Heights
Brooklyn, New York 11201-2483

RE:     Letter of Intent dated September 9, 2008

Dear Mr. Larson:

Thank you for your comprehensive Letter of Intent dated September 9, 2008.

Since then we have had an opportunity to "flesh out" the Letter of Intent with Dan Rice, meet with our financing sources and investors, and deliberate among ourselves. As a result, we are prepared to execute your Letter of Intent with the following revisions (**in bold print**):

**TERMS COMMON TO BOTH ALTERNATIVES.**

1. OK.
2. OK.
3. (a.) Add: **Purchaser acknowledges that Seller has delivered copies of its Phase I Environmental Report (EcolSciences), Draft Environmental Impact Statement (Saccardi & Schiff), Final Environmental Impact Statement (Saccardi & Schiff), and a disk of engineered plans (Atzl, Scatassa, & Zigler).**
3. (b.) OK.
4. OK.
5. OK.
6. Change: Replace "used" with "**controlled**" by Jehovah's Witnesses.
7. OK.
8. OK.
9. OK.
10. OK.

**PURCHASE ALTERNATIVE #1.**

1. Change: …it will require Purchaser to deposit in escrow the sum of **One Million Dollars ($1,000,000.00)** as a "Deposit."
1. Add: Portions of the Deposit will become non-refundable **and released to Seller** as follows; **however, the Deposit in escrow will be no less than $300,000 throughout the Approval and Extended Approval Periods:**
1. Change: $500,000 at the end of **sixty (60) days** after the effective date of the Final Agreement;
1. Change: **$400,000** upon **the earlier of** the Lead Agency's acceptance of the Draft Environmental Impact Statement **or 15 months from the effective date of the Final Agreement;**
1. Add: **$200,000 after  Purchaser's receipt of the zoning or special permit necessary for the construction of Purchaser's proposed project;**
2. (a.) Change: Due Diligence Period to **sixty (60) days**.
2. (b.) Add: …regulatory approvals **from the Town of Ramapo**, including final site plan approval …
2. (b.) Add: …another 30 days **by releasing a $200,000 non-refundable deposit.**
3. OK.

**PURCHASE ALTERNATIVE #2.**

N/A.


Please feel free to contact me at any time. I can be reached at 201-341-1540 or rdj@lorterdan.com.


Sincerely,
**LORTERDAN PROPERTIES AT RAMAPO I, LLC.**


Robert D. Jackson
Managing Member

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 147

***UNITED STATES BRANCH***
BA:RA  May 4, 2011  No. 1009

GOVERNING BODY

Re:  Update on Ramapo Property Repurchase Agreement

Dear Brothers:

This is to provide an update on the Repurchase Agreement with Lorterdan Properties at Ramapo I, LLC, and its member Mr. Robert Jackson.  The Repurchase Agreement required that, if Watchtower decided not to pursue its development and gave Lorterdan timely notice of that fact in writing, then Lorterdan must repurchase the 248-acre Ramapo property within six months.  That notice also triggered the termination of the $9,500,000 compensation fee outlined in the Consulting Agreement.  Mr. Jackson received written notification on November 1, 2010, informing him that Watchtower was exercising its right to require Lorterdan to buy back the property.  He had six months to arrange financing and complete the repurchase.  The time limit expired on April 30, 2011.

On March 28, 2011, Lorterdan's attorney wrote the Legal Department a letter with several false accusations in an attempt to have Watchtower pay the compensation fee.  This was discussed by our branch committee and the Governing Body, and a response was sent informing Lorterdan that Watchtower continues to adhere to the terms of the agreements.  Mr. Jackson had the right to purchase up to six one-month extensions at approximately $115,000± each.  On Friday, April 29th the attorney again contacted the Legal Department seeking a no-cost extension for an indefinite period of time.  This was discussed by the brothers, and by e-mail he was informed that Watchtower was adhering to the terms of the original agreements.  However, he was told that, if Lorterdan was to make the payment for an extension no later than Monday, May 2, 2011, it would be accepted as timely but that, if no extension payment is received on that date, then Lorterdan would be in breach of the Repurchase Agreement as of April 30, 2011.  As of the time of this writing, no payment has been received.

Since this payment was not made, then as of May 1, 2011, Lorterdan no longer has any right or interest in the Ramapo property, and Watchtower may deal with the property as it desires.  Therefore, we are seeking your direction on how we should proceed.  The Governing Body letter dated HWB:HPF September 9, 2010, No. 138G provided direction, stating "the Governing Body does not have any plans to keep the property at Ramapo. Even if the future transaction does not take place, we are interested in selling it."  Assuming that this is the current direction, we offer the following points for your consideration.

A first recommendation is to establish the current market value of the property and determine whether it has substantial future potential that would warrant holding the prop-

GOVERNING BODY
BA:RA  May 4, 2011  No. 1009
Page 2

erty until market conditions improve.  A highest-and-best-use appraisal performed by a reputable appraiser would also determine if there is a use other than the existing approved residential sub-division of 292 home sites for 55 years of age and older homeowners that has a greater return.  The estimated cost for this appraisal is $15,000.  A second recommendation is to request that the Design/Build Department monitor the existing residential sub-division approval and keep its status active so that the property can be sold with the approved plan in place.  A third recommendation is to follow through on the efforts that Lorterdan initiated with the Town of Ramapo to have the definition of the existing zoning district enhanced by removing the 55 years of age restriction so that the property will appeal to a larger pool of potential buyers.  Finally, we recommend that the NY-1 RBC perform a study on the feasibility of using the seven-acre portion of this property that exists in the Town of Tuxedo in Orange County as a potential site for a double auditorium Kingdom Hall.  This may provide a Kingdom Hall location within five minutes of the Warwick site.

Thank you for the opportunity to comment on this.  We look for Jehovah's direction on how best to proceed.  We await your guidance.

Your brothers,

*{Signed by Leon Weaver, Jr.}*

For the U.S. Branch Committee

cc:  Richard Moake, Legal Department
Robert Pollock, Design/Build Department
Daniel Rice, Real Property Department

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 148

# UNITED STATES BRANCH

BA:BH   April 26, 2011   No. 972

Via E-Mail

**URGENT**

GOVERNING BODY

 Re:   Ramapo Property—Denial of Tax Exemption

Dear Brothers:

 We want to inform you of the most recent development regarding the property in the Town of Ramapo.  On April 20, 2011, the Town denied Watchtower-New York's applications for real property tax exemption for all 293 parcels for the 2011 assessment year.  The reasons for the denial are that the "property is not used exclusively for exempt purposes" and that Watchtower has suspended its plans to develop the lots.

 We will be discussing this at our meeting tomorrow and will send you a full report with our recommended course of action, which may require your prompt attention.  In the meantime, we just want you to be aware of this mater.

 We send our warm Christian love and greetings.

      Your brothers,

       {Signed by Leon Weaver, Jr.}
       For the United States Branch Committee

cc: Legal Department
   Real Property Department

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 149

## *UNITED STATES BRANCH*

BA:BK  August 18, 2009  No. 1418

Via E-Mail

GOVERNING BODY

     Re:  Property Update for August 12 to August 18, 2009

Dear Brothers:

     Please find enclosed the weekly property update.

### Sterling Mine Road (Lorterdan) – Town of Ramapo, Rockland County

     As described in our letter No. 1332, dated BA:BD July 24, 2009, we are awaiting your direction concerning the Community Benefit Agreement proposed by the Town of Ramapo supervisor.  The brothers are acting in harmony with your direction in letter No. 1403G, dated GED:AH July 15, 2009, to "not do anything to jeopardize our being able to return the property back to the original owner after the two years."

### Long Meadow Road (King's College/Touro College) – Town of Warwick, Orange County

     The Design/Build Department submitted our project application to the Town of Warwick Planning Board on August 12, 2009.  The application will be considered in a workshop session on Monday, August 24, 2009, and at a regular planning board meeting on Wednesday, September 2, 2009.  No media coverage has occurred thus far.

     The Maintenance/Construction Department continues to coordinate necessary cleanup to make the property safe and secure.  Approximately thirty dumpsters of debris have been removed, and arrangements for repairs to the roof and essential utilities are ongoing.  The security fence around the buildings is nearly complete and brush is being cleared from around the buildings and driveway.  A local security company is patrolling the property to prevent weekend and after-hours trespassing.  On Friday, August 14, 2009, the brothers introduced themselves to the local police chief and were favorably received.

     Thank you for considering this update.

               Your brothers,

               *Signed by Leon Weaver, Jr.*

               For the U.S. Branch Committee

cc:    Alex Reinmueller
        Daniel Rice

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 150

# M E M O R A N D U M
MC:MCT August 4, 2009

UNITED STATES BRANCH COMMITTEE
c/o Leon Weaver

Re: Inquiry Regarding Seeking Permits for the Property in the Town of Warwick

Dear Brothers:

This is to inquire concerning the recent direction from the Governing Body in its letter No. 1432G, dated GAX:AH July 22, 2009. That letter stated in part, "We do not want [the Property Search Group] to pursue additional property actively, but instead they should focus their efforts on getting permits to develop the Touro property especially." This was a subject of discussion at our most recent Property Search Group meeting because obtaining permits is typically cared for by other groups, such as the Design Build Department with the involvement of a project team. I was asked to bring this subject back to the Branch Committee for additional clarification, if possible. Specifically, we wonder to what extent the Property Search Group should be involved in "getting permits."

Thank you for considering this inquiry, and we look forward to your direction.

Your brother,

Signed by Lon Schilling

Lon Schilling

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 151

From: Van Tassel, Kris
Sent: Friday, July 31, 2009 8:34 AM
To: Jeffrey S. Baker (Storm King); Pollock, Robert Jr.; Rice, Daniel; Schilling, Lon
Cc: Moake, Richard; Wilson, Judd
Subject: FW: Lorterdan Tax Exemption


Brothers,

Here is some helpful clarification from Rick Moake and Bob Pollock on the subject of Lorterdan.

Kris Van Tassel - Wallkill Building Desk - 41803(p)

From: Pollock, Robert Jr.
Sent: Friday, July 31, 2009 8:18 AM
To: Van Tassel, Kris
Subject: FW: Lorterdan Tax Exemption

Kris,
FYI
RaP

From: Moake, Richard
Sent: Thursday, July 30, 2009 10:51 PM
To: Pollock, Robert Jr.
Subject: RE: Lorterdan Tax Exemption

Bob,

You're correct, and I understood our conversation that way. Wwe can withdraw our application and anything that the Town would do thereafter would be on its own and not related to our application.

If we were to make that decision (to withdraw the application), then I would think we would have decided to abandon our intent to develop the property--at least for our administrative center. If that were the case, then I would recommend that we simultaneously withdraw and give Lorterdan notice to repurchase.

Unfortunately, I answered Kris' question literally and did not add the additional information that you mentioned--I was rushing to answer mail before leaving.

Rick

From: Pollock, Robert Jr.
Sent: Thu 7/30/2009 11:26 AM
To: Moake, Richard
Subject: FW: Lorterdan Tax Exemption
Rick,
I realize that all this "what if" stuff is complicated and that you can never anticipate everything. But . . . We (you and I) discussed this scenario. I understood that if the Town begins to go in another direction other than what we want, we can withdraw our application and officially inform Robert that we no longer want to proceed with the property. That having been done, it would be much more difficult for Robert to force payment of the additional $9.5 million based on actions that the Town took subsequent to that, since those actions would not be a result of our application, which would no longer be active. Did I misunderstand or not communicate clearly enough?
Thanks,

RaP

---

From: Van Tassel, Kris
Sent: Thursday, July 30, 2009 11:10 AM
To: Jeffrey S. Baker (Storm King); Pollock, Robert Jr.; Rice, Daniel; Schilling, Lon
Cc: Wilson, Judd
Subject: FW: Lorterdan Tax Exemption
FYI.
Kris Van Tassel - Wallkill Building Desk - 41803(p)

---

From: Moake, Richard
Sent: Wednesday, July 29, 2009 4:05 PM
To: Van Tassel, Kris
Subject: RE: Lorterdan Tax Exemption
Kris,
I never got back to you about your question.  Your assessment is not off the wall but quite accurate.
Rick

---

From: Van Tassel, Kris
Sent: Thursday, July 23, 2009 3:47 PM
To: Moake, Richard
Subject: RE: Lorterdan Tax Exemption
Rick,
This may be an off-the-wall question, but I have been reviewing the Lorterdan Purchase and Sale Agreement and wonder if the following scenario is possible:
(1)     Watchtower signs the Community Benefit Agreement.
(2)     Watchtower submits an application for a zoning amendment.
(3)     Ramapo rezones the property or amends the zoning "pursuant to an application filed by Watchtower in furtherance of the Development" (Exhibit 2.3 Repurchase Agreement 2.9), but the rezoning or zoning amendment is not in harmony with what we propose. In other words, we submitted a zoning amendment in furtherance of the development, but what the town enacted was not what we wanted. The question seems to be whether "pursuant" means "in harmony with" or "after." If it means "after," then . . .
(4)     Watchtower must pay the $9.5 million according to the consulting agreement even though the rezoning or zoning amendment does not necessarily allow us to use the property as we would like. (Exhibit 12.1 Consulting Agreement 4)
(5)     Lorterdan buys the property back for $11.5 million if Watchtower decides not to develop (Exhibit 2.3 Repurchase Agreement 2) or Watchtower keeps the property for $21 million.
Kris Van Tassel - Wallkill Building Desk - 41803(p)

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# **Document 152**

**From:** Robert Jackson [mailto:rdj@lorterdan.com]
**Sent:** Friday, June 19, 2009 12:36 PM
**To:** Pollock, Robert Jr.; Rice, Daniel; Moake, Richard
**Cc:** am@mcfnylaw.com; eu@mcfnylaw.com; calexander@mandelbaumsalsburg.com
**Subject:** RE: Ramapo: Lorterdan Approval

Thank you.

**From:** bpollock@jw.org [mailto:bpollock@jw.org]
**Sent:** Thursday, June 18, 2009 1:46 PM
**To:** rdj@lorterdan.com; DRice@jw.org; rmoake@jw.org
**Cc:** am@mcfnylaw.com; eu@mcfnylaw.com; calexander@mandelbaumsalsburg.com
**Subject:** RE: Ramapo: Lorterdan Approval

Robert,

Thanks for you note. We understand and agree with your moving ahead with this to protect your possible interests for the future. Feel free to send us the Consent Agreement whenever you feel it is needed.

Thanks,
RaP

**From:** Robert Jackson [mailto:rdj@lorterdan.com]
**Sent:** Wednesday, June 17, 2009 4:05 PM
**To:** Pollock, Robert Jr.; Rice, Daniel; Moake, Richard
**Cc:** Anthony Montalbano; Elizabeth L. Urtz; Craig Alexander
**Subject:** Ramapo: Lorterdan Approval
**Importance:** High

Pursuant to our Agreement, Lorterdan Properties at Ramapo I, LLC will submit an application to extend the Site Plan Approval for the residential development in late August/early September and we wanted to provide you with adequate notice. We hope to be heard in the first quarter of 2010. However, if the political winds should "shift" in 2009, we want to be in a position to push through a hearing in 2009.

You should also know that we will be using Montalbano Condon & Frank for the legal work and Atzl, Scatassa, & Zigler for the engineering. We will get AS&Z rolling in 2-3 weeks. In addition, we will need a Consent Agreement form signed by Watchtower in order to submit the application.

Please feel free to contact me via email or 201-341-1540 should you have any questions.

Regards.

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 153

From: Rice, Daniel
Sent: Thursday, March 26, 2009 4:35 PM
To: Pollock, Robert Jr.; Moake, Richard; 'Jeff Baker'; Schilling, Lon; Van Tassel, Kris
Subject: RE: Watchtower - Ramapo PILOT


Brothers,


        I had an interesting conversation with Robert Jackson this afternoon. He said that over the
last 8 years that he has had someone at Town Hall give him a heads-up on the concerns that
would affect his approvals and that the person has never steered him wrong. He led me to
believe that it was not Chris St. Lawrence but would not say who it is. Robert's comment was that
this person indicated to him that the Town does not have its normal issues to negotiate with
developers i.e. Open Space, Sight lines, Disturbance, have all been addressed as benefits in our
proposal over Lorterdan's and that the only matter the Town has left is to seek fiscal help by
means of a PILOT. Robert also made several references to Alan Simon's comments at an earlier
CDRC meeting about arranging some gradual reduction of taxes over several years until the
property became fully exempt. I definitely got the sense that Robert was a messenger sent to
deliver the message. Robert also said that he thought the benchmark was $200,000 for the taxes.


        Dan


From: Pollock, Robert Jr.
Sent: Thursday, March 26, 2009 4:03 PM
To: Moake, Richard; Jeff Baker; Rice, Daniel; Schilling, Lon; Van Tassel, Kris
Subject: FW: Watchtower - Ramapo PILOT


Brothers,


We will have to follow on this with BC and GB soon! Of course we'll have to discuss it as a group
first. I'm getting some more info from Richard Sarajian on what the difference is between General
Town and Unincorporated Town taxes, but the DEIS for Lorterdan stated they were projecting as
follows:


General Town        $225,146

Unincorporated Town $180,524


Of course it's doubtful that those would be realized since it is unlikely they would get full build out.

RaP


From: Everett, David [mailto:DEverett@woh.com]
Sent: Thursday, March 26, 2009 2:08 PM
To: Pollock, Robert Jr.
Cc: 'Richard H. Sarajian'; Ruzow, Daniel; Rice, Daniel
Subject: Watchtower - Ramapo PILOT


Bob, Robert Jackson called me today.  He received a call from the Town but he wouldn't tell me
who called him. I found this to be a little strange.  He could only say that the call came from "a
person at the highest level in the Town."  I assume the Supervisor.  This person told Bob that the
Town would like to pursue a PILOT agreement with Watchtower as part of the rezoning.  The
Town would like to have a general understanding of what the PILOT might be before the next
Town Board meeting so the Board can immediately diffuse any criticism of the rezoning based on
the tax-exempt nature of the proposed use.  I told Robert that I would pass this information along
to you.  I know this issue was expected.


I have copied Richard Sarajian on this email in an effort to bring him into the loop on things.  I
think Richard can be instrumental in dealing with this issue.  Dave

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 154





# WATCHTOWER

### Bible and Tract Society of New York, Inc.

Legal Department
100 Watchtower Drive, Patterson, NY 12563-9204, U.S.A.
Phone: (845) 306-1000   Fax: (845) 306-0709

April 7, 2011

Mr. Barry R. Mandelbaum, Esq.
Mandelbaum Salsburg
155 Prospect Avenue
West Orange, NJ 07052-4204            **VIA FACSIMILE AND REGULAR MAIL**

Re:  Lorterdan Properties at Ramapo I, LLC

Dear Mr. Mandelbaum:

This is in reply to your letter dated March 28, 2011, relating to your above-named client. We have discussed your letter with our client.

Frankly, we were surprised by the tone and content of your letter.  In the five months since Watchtower's November 1, 2010, written notice was delivered, we have heard nothing from your client indicating that Lorterdan Properties will not honor the terms of the Repurchase Agreement.  On the contrary, your client has submitted a request to the Town of Ramapo that the Town Board amend the Zoning Code with respect to the subject property.  Watchtower has co-operated with your client in furtherance of your client's request to the Town, including providing an Owner's Consent Resolution.

Your March 28, 2011, letter is factually inaccurate and its accusations libelous.  Watchtower denies your letter's allegations and rejects your client's demands as stated in that letter. Watchtower relies on and reaffirms its letter to your client dated November 1, 2010, and stands ready to close the transaction with your client by the end of this month, according to the terms of the Repurchase Agreement.

If your client has something constructive to present to Watchtower, please feel free to contact me or our General Counsel, Philip Brumley.

Very truly yours,

Richard D. Moake
Associate General Counsel

RDM:db

P. 1

# TRANSMISSION REPORT

(THU) APR 7 2011 13:11
Law Offices 845-306-0709

User/Account      :
DESTINATION       : 919733257467
DEST. NUMBER      : 919733257467

F-CODE            :

PAGES             : 1page
RESULT            : OK

DOCUMENT#         : 7529767-238
TIME STORED       : APR  7 13:11
TX START          : APR  7 13:11
DURATION          : 33sec
COM. MODE         : ECM

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 155

From:       Pollock, Robert Jr.
Sent:       Thursday, March 04, 2010 5:06 AM
To:         Judith A. Procopio
Cc:         Miller, John III; Fowler, John; Anthony Montalbano; Bernadette Kilduff
Subject:    RE: Watchtower - Letter from Town of Ramapo Assessor

---

Judith,


Thanks for your note. We see no reason why Robert Jackson could not have a copy of this. You can feel free to give him a copy.


RaP


From: Judith A. Procopio [mailto:jap@mcfnylaw.com]
Sent: Tuesday, March 02, 2010 11:56 AM
To: Pollock, Robert Jr.
Cc: Miller, John III; Fowler, John; Anthony Montalbano; Bernadette Kilduff
Subject: Watchtower - Letter from Town of Ramapo Assessor
Importance: High


Dear Mr. Pollock:


Please see the attached letter from the Assessor for the Town of Ramapo regarding the tax exempt status for Watchtower's lots for 2009-10 tax year.


Note that I was approached by Robert Jackson, asking for a copy of this letter when it became available. Please advise if I may forward the letter to Mr. Jackson.


Judi Procopio


Judith A. Procopio, Esq.
Montalbano, Condon & Frank, P.C.
67 North Main Street
New City, NY 10965
(845) 634-7010
Fax: (845) 634-8993

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 156

# CORBALLY GARTLAND AND RAPPLEYEA LLP

A HERITAGE OF LEGAL COUNSEL

SINCE 1876

BARDAVON BUILDING
35 MARKET STREET
POUGHKEEPSIE, NY 12601-3285

845-454-1110 TEL • 845-454-4857 FAX
E-MAIL: info@cgrlaw.com

WWW.CGRLAW.COM

CHARLES J. CORBALLY (1966)
JOHN J. GARTLAND, JR. (2003)
ALLAN E. RAPPLEYEA
JON HOLDEN ADAMS
MICHAEL G. GARTLAND
VINCENT L. DEBIASE
PAUL O. SULLIVAN (also FL)
WILLIAM F. BOGLE, JR.
RENA MUCKENHOUPT O'CONNOR
ALLAN B. RAPPLEYEA (also CT)
LEAH J. BALASSONE
KAREN E. HAGSTROM
WILLIAM W. FRAME
MARGARET M. WALKER

Of Counsel
MILTON M. HAVEN (retired)
RICHARD V. CORBALLY

Administrator
CAROL ANN NEVILLE

Regional Offices
30 FRONT STREET
PO BOX 679
MILLBROOK, NY 12545
845-677-5539 TEL
845-677-6297 FAX

6369 MILL STREET
PO BOX 366
RHINEBECK, NY 12572
845-876-4091 TEL
845-876-7192 FAX

BY APPOINTMENT:
CLEARWATER, FL 34617

February 25, 2009

Mandelbaum Salsburg
Barry R. Mandelbaum, Esq.
155 Prospect Avenue
West Orange, New Jersey 07052

*Re: TD Bank, N.A. w/Lorterdan-Ramapo*

Dear Barry:

As you know, we represent TD Bank, N.A., formerly known as TD Banknorth, N.A., successor by merger to Hudson United Bank, in connection with the above matter.

Our client has agreed to accept the sum of $10,000,000.00 in satisfaction of the loans it made to Lorterdan Properties at Ramapo I, LLC which are secured by mortgages on the real estate described in the following mortgages:

1) Mortgage in the original principal amount of $3,000,000.00 made by Lorterdan Properties at Ramapo I, LLC to Hudson United Bank dated September 8, 2005 and recorded September 27, 2005 in Liber 11951 page 988 in the office of the Orange County Clerk;

2) Mortgage in the original principal amount of $8,300,000.00 made by Lorterdan Properties at Ramapo I, LLC to Hudson United Bank dated September 8, 2004 and recorded May 22, 2007 in Liber 12450 page 267 in the office of the Orange County Clerk;

3) Mortgage in the original principal amount of $1,700,000.00 made by Lorterdan Properties at Ramapo I, LLC to Hudson United Bank dated September 8, 2004 and recorded May 22, 2007 in Liber 12450 page 319 in the office of the Orange County Clerk;

4) Mortgage in the original principal amount of $400,000.00 made by Lorterdan Properties at Ramapo I, LLC to TD Banknorth, NA dated November 19, 2007 and recorded March 27, 2008 in Liber 12638 page 1643 in the office of the Orange County Clerk; and

5) Mortgage in the original principal amount of $1,171,500.00 made by Lorterdan Properties at Ramapo I, LLC to TD Banknorth, NA dated March 26, 2007 and recorded June 7, 2007 in Liber 12461 page 1649 in the office of the Orange County Clerk.

February 25, 2009
Page 2

Upon confirmation of receipt of these funds by our client, we have been instructed to prepare and provide you with satisfactions and/or releases as to the Orange and Rockland County property. At that time our client will also execute and deliver to you, releases of Assignment of Leases and Rents.

Wire instructions for TD Bank, N.A. are as follows:

TD Banknorth
Wire Suspense Acct.
ABA #211274450
for further credit to account #4029301960

Upon receipt of such funds, our client will instruct Bleakely, Platt and Schmidt to release the $180,000.00 it holds in escrow to your client.

Our fee for the preparation of the satisfactions and/or releases will be $750.00.

Sincerely,

CORBALLY, GARTLAND AND RAPPLEYEA, LLP

MICHAEL G. GARTLAND, ESQ.

MGG/dce

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# **Document 157**

Form Kell
9/3/08

August 27, 2008

Lorterdan Properties
c/o Robert D. Jackson
35 Virginia Ave
Montclair, NJ 07042-2464

Re: Property in Towns of Ramapo and Tuxedo, New York

Dear Mr. Jackson:

This letter of intent ("Letter") is to present the terms under which Watchtower Bible and Tract Society of New York, Inc., ("Purchaser"), proposes to purchase from Lorterdan Properties at Ramapo I, LLC ("Seller") all of the land, buildings, and improvements owned by Seller at the addresses known as 155 Sterling Mine Road, 175 Eagle Valley Road, 199 Table Rock Road, and 25 Table Rock Road, Ramapo, Rockland County, New York and on Route 72 in Tuxedo, Orange County, New York. The proposal is in the form of two alternatives, with the terms of purchase under each alternative as follows:

**Terms Common to Both Alternatives Terms Common to Both.**

1. Property. The Seller owns and is willing to sell approximately two hundred forty-eight (248) acres of land with buildings and other improvements located at the address known as 155 Sterling Mine Road, Ramapo, New York, 10901 that is located along Sterling Mine Road in the Town of Ramapo in Rockland County and the Town of Tuxedo in Orange County, New York, identified as Town of Ramapo tax parcels Section 38.14, Block 1, Lot 1; Section 38.10, Block 1, Lot 8; Section 838.14, Block 1, Lot 1.1; Section 838.14, Block 1, Lot 1.2 and Town of Tuxedo tax parcel Section 17, Block 1, Lot 19.21 (collectively the "Property").

2. Title. At the closing, if one occurs, Seller will convey the Property by Bargain and Sale Deed with Covenant Against Grantor's Acts containing the covenant required by subdivision 5 of Section 13 of the New York State Lien Law. Seller will convey to Purchaser fee simple title to the Property free and clear of encumbrances except those permitted in the Final Agreement, if any.

3. Conditions Before Final Agreement. Immediately upon the full execution of this Letter, Seller shall:

a. Give to Purchaser full and complete copies of all studies and reports (excluding any appraisals or valuations) (collectively "reports") that Seller has in its possession relating to the Property including, but not limited to, soil and environmental reports (Phase I and/or Phase II or otherwise), title reports, surveys, traffic studies, utility studies,

**Deleted:** p

**Comment [A1]:** This is a New Jersey corporation. Robert Jackson has a New York Corporation called Lorterdan Golf Properties, Inc. There are also 12 New Jersey registered Lorterdan companies. The other "Lorterdan Properties at Ramapo I, L.L.C." has periods after the letters in the L.L.C.

**Deleted:** and [other addresses]

**Comment [A2]:** Determine the actual acreage.

**Comment [A3]:** Actual acreage from Oxford Group Appraisal 1/18/08 is 241.013 acres for the Ramapo properties and 7 acres for the Tuxedo property. - KVT

**Deleted:** one

**Deleted:** 1

**Deleted:** [address]

**Deleted:** [name]

**Comment [A4]:** Insert tax parcel information.

**Deleted:** [insert for both towns]

Letter of Intent
Lorterdan Properties
Page 2

wetland reports, archeology studies, and any reports referenced in any draft or final Environmental Impact Statement or other document or statement submitted by Seller to any governmental agency or office relating to the Property (except such reports as are confidential or privileged and may not be released by the Seller to any party), and copies of any notices of violations of law. All such reports are provided by Seller without any representation or warranty, express or implied. (Purchaser will hold such reports provided by the Seller in confidence and only for its use in evaluating the Property); and

b.      Allow Purchaser access to the Property so that Purchaser may begin its evaluation of the Property. Prior to the Purchaser or Purchaser's agents performing any invasive test on the Property, Purchaser will provide Seller with a policy of general liability insurance from a company reasonably acceptable to Seller in which the Seller (and any other party whose name is furnished to Purchaser) is an additional named insured, which said policy shall be in an amount not less than $1,000,000.00 single limit coverage and property damage in an amount of not less than $500,000. The Purchaser shall provide the Seller with certificates of Workers' Compensation insurance for any persons and entities for whom such coverage is required and that enter the Property (Seller understands that members of the religious order who work through Purchaser are not subject to Worker's Compensation and that there is no such coverage for them). In addition the Purchaser shall defend, hold the Seller harmless, and indemnify the Seller against any and all claims made against the Seller arising out of the activities of the Purchaser and Purchaser's agents, contractors, consultants or vendors on the Property which indemnification shall include indemnification for Seller's attorney's fees resulting from such claim or claims. The Purchaser will provide written notice to the Seller of its intention or the intention of any of its consultants to enter onto the Property at least one (1) business day prior to such entrance.

To the extent any studies, reports or documents referenced in subparagraph 4(a) above require governmental or other consent to provide the same to Purchaser, Seller shall cooperate (at no cost to Seller) with Purchaser in efforts to obtain such consent. Additionally, Seller agrees that Purchaser shall be able to use any such information provided by Seller in Purchaser's discussions with governmental agencies (federal, state, or local) and quasi-governmental officials and entities and with environmental and private interest groups.

4.      Exclusivity.  Seller hereby covenants and agrees that it shall not enter into any agreement to sell the Property to any party during the forty-five (45) days immediately following the date of Seller's signing this Letter ("Exclusive Period"). In the event that a Final Agreement is not concluded within the Exclusive Period, Seller shall thereafter be free to enter into any agreement it chooses with respect to the Property. This Paragraph 9 is binding on the Seller whether or not a Final Agreement is ultimately reached between the parties. Nothing herein shall prevent Seller from negotiating for the sale of or discussing the Property with another potential purchaser, subject to the provisions of Paragraphs 8 and 9 of this Letter.

Comment [A5]: Should this read "4"?

Comment [A6]: Is this correct?

Letter of Intent
Lorterdan Properties
Page 3

    5.    <u>Letter is Non-Binding</u>.  This Letter is an expression of intent only (and, when Seller indicates its approval of this Letter, may be called a Memorandum of Understanding), is not a binding agreement (except as provided in and as pertains exclusively to Paragraphs 4, 8, and 9), and is only an expression of the basic terms and conditions to be incorporated in a Final Agreement if one is entered into.  This letter does not obligate either party to proceed to the completion of a Final Agreement or to negotiate the terms of a Final Agreement.  Except as expressly set forth herein, neither party has any obligation to the other until both execute a Final Agreement, which must be satisfactory in form and substance to Purchaser and Seller and their respective counsel.  The terms of this Letter shall be superseded by the terms and conditions of the Final Agreement.  When the Final Agreement is signed or at the end of the Exclusive Period, whichever occurs first, this Letter shall have no legal effect and the terms hereof shall not be used as evidence in any claim or lawsuit between the Purchaser and Seller.

    6.    <u>Assignability.</u>  The Purchaser acknowledges that this Letter is non-assignable.  However, Purchaser may designate another legal entity used by Jehovah's Witnesses to be the Purchaser in the Final Agreement.

    7.    <u>Broker</u>.  Purchaser represents to Seller that it has not retained or commissioned any broker, finder, real estate agent, or other similar person (collectively "Agent") in connection with the transaction contemplated by this.  Seller represents to Purchaser that, except for David J. Gold, doing business as Country Homes & Estates LLC, Seller has not retained or commissioned any broker, finder, real estate agent, or other similar person (collectively "Agent") in connection with the transaction contemplated by this Letter and that Seller alone shall be responsible for any fees, commissions, or other compensation due to David J. Gold, doing business as Country Homes & Estates LLC or its/their brokers, employees, or agents, if the transaction contemplated by this Letter is ultimately concluded.  Purchaser agrees that it will indemnify, defend, and hold the Seller free and harmless from the claims of any Agent for fees, commissions, or other compensation in connection with representing Purchaser regarding this Letter or the purchase of the Property.  Seller agrees that it will indemnify, defend, and hold the Purchaser free and harmless from the claims of any Agent for fees, commissions, or other compensation in connection with representing Seller regarding this Letter or the purchase and sale of the Property.

    8.    <u>Confidentiality</u>  Except as required by law, both parties will keep confidential the existence and terms of this Letter, except that each may disclose the same to their respective attorneys and consultants, so long as those also agree to this confidentiality provision, and except that Purchaser may disclose the existence and, if necessary, the terms (except financial terms) of this Letter to government and quasi-government officials and entities and environmental and private interest groups for the purpose of assessing their potential support or opposition to Purchaser's proposed use of the Property.  Seller shall not disclose, allude to, or reveal the identity or name of Purchaser.  Seller understands, consents, and agrees that Purchaser is permitted to freely discuss its proposed project and the Property with all governmental and quasi-governmental officials and entities that have regulatory involvement or jurisdiction over the Property or Purchaser's intended project and with environmental and private interest groups.  This Paragraph 8 titled "Confidentiality" is binding on the Purchaser and Seller and their respec-

Letter of Intent
Lorterdan Properties
Page 4

tive directors, officers, employees, and agents whether or not a Final Agreement is ultimately reached between the parties.

9. <u>Authorized Signatory.</u> The Purchaser and the Seller represent to each other that the individual executing this Letter is duly authorized to do so by their respective entities.

10. <u>Time of the Essence.</u> Time of the essence is applicable to all time periods and dates in this Letter and in any Final Agreement.

### Purchase Alternative #1.

1. <u>Purchase Price.</u> The Purchase Price is Twenty-eight Million and No/100 Dollars ($28,000,000.00) ("Purchase Price"). If a mutually acceptable Purchase and Sale Agreement between the Purchaser and Seller ("Final Agreement") is executed, it will require the Purchaser to deposit in escrow the sum of One Million Four Hundred Thousand Dollars ($1,400,000.00) as a "Deposit." The Deposit will be credited to the Purchase Price at the closing of the transaction. Portions of the Deposit will become non-refundable as follows:

[Insert amounts and "milestones"]

Any interest on the Deposit will be the Purchaser's and may be applied to the Purchase Price. The Deposit, or the remaining portions thereof, will be returned to the Purchaser if the transaction does not close, unless it does not close because of Purchaser's default under the Final Agreement. The balance of the Purchase Price will be paid in full by certified or cashier's check or wire transfer. The Final Agreement will not contain any financing contingency.

2. <u>Contingencies in Final Agreement.</u> Purchaser's obligation to purchase the Property shall be contingent upon the following, which will be included as contingencies in the Final Agreement:

a. Purchaser being satisfied with the Property. Purchaser shall have ninety (90) days from the date of the Final Agreement within which to perform its due diligence, including environmental assessments of the Property ("Due Diligence Period"). Before the expiration of the Due Diligence Period, the Purchaser, in its sole discretion, may terminate the Final Agreement at which time the Deposit and any interest thereon will be distributed to the Purchaser.

b. Purchaser receiving all governmental and regulatory approvals, including final site plan approval, necessary for the construction of its proposed project on the Property ("Approvals"). If such approvals are not received within twenty-four (24) months from the effective date of the Final Agreement, then Purchaser may elect to terminate the Final Agreement, in which case the remaining portion of the Deposit, if any, and any interest accrued on the Deposit, shall be distributed to Purchaser, or proceed with the closing of the transaction.

**Comment [A7]:** What do we want to occur if 24 months pass and we have not achieved our milestones but still want to proceed?

3. <u>Closing.</u> The closing of the transaction will take place within thirty (30) days of the date that Purchaser has received the Approvals.

Letter of Intent
Lorterdan Properties
Page 5

### Purchase Alternative #2.

1.    <u>Purchase Price</u>.  The Purchase Price is Twenty Million and No/100 Dollars ($20,000,000.00) ("Purchase Price").  If a mutually acceptable Purchase and Sale Agreement between the Purchaser and Seller ("Final Agreement") is executed, it will require the Purchaser to deposit in escrow the sum of Five Hundred Thousand Dollars ($500,000.00) as a "Deposit."  The Deposit will be credited to the Purchase Price at the closing of the transaction.  Any interest on the Deposit will be the Purchaser's and may be applied to the Purchase Price.  The balance of the Purchase Price will be paid in full by certified or cashier's check or wire transfer at the Closing.  If the transaction does not close, unless it does not close because of Purchaser's election to terminate within the Due Diligence Period (as defined below) or of Seller's default under the Final Agreement, the Deposit and any interest earned thereon will be distributed to the Seller as liquidated damages.  The Final Agreement will not contain any financing contingency.

2.    <u>Contingency in Final Agreement</u>.  Purchaser's obligation to purchase the Property shall be contingent upon Purchaser being satisfied with the Property.  Purchaser shall have ninety (90) days from the date of the Final Agreement within which to perform its due diligence, including environmental assessments of the Property ("Due Diligence Period").  Before the expiration of the Due Diligence Period, the Purchaser, in its sole discretion, may terminate the Final Agreement at which time the Deposit and any interest thereon will be distributed to the Purchaser.  This contingency will be included as a contingency in the Final Agreement.

3.    <u>Closing</u>.  The closing of the transaction will take place within one (1) year of the date that a mutually acceptable Purchase and Sale Agreement is executed.


If the foregoing terms meet with your approval, please so indicate by signing two (2) originals of this Letter in the place indicated below and return one original to the undersigned.  Thereafter, we will direct our legal counsel to prepare and forward to you a proposed Purchase and Sale Agreement.

Sincerely,


Max Larson, President
Watchtower Bible and Tract Society
   of New York, Inc.


Alternative #__ is accepted this ____ day of September 2008 on behalf of Lorterdan Properties.

_____
Robert D. Jackson, [President/Manager/Managing Partner]

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 158

*Draft of LOI w/ Rick's comments*

August 27, 2008

Lorterdan Properties
c/o Robert D. Jackson
35 Virginia Ave
Montclair, NJ 07042-2464

Re: Property in Towns of Ramapo and Tuxedo, New York

Dear Mr. Jackson:

This letter of intent ("Letter") is to present the terms under which Watchtower Bible and Tract Society of New York, Inc., ("Purchaser"), proposes to purchase from Lorterdan Pproperties ("Seller") all of the land, buildings, and improvements owned by Seller at the addresses known as 155 Sterling Mine Road, Ramapo, Rockland County and [other addresses], New York.  The proposal is in the form of two alternatives, with the terms of purchase under each alternative as follows:

**Terms Common to Both Alternatives** **Terms Common to Both**.

1.   Property.  The Seller owns and is willing to sell approximately ███████████ ████████████ of land with buildings and other improvements located at the address known as [address], New York, that is located along Sterling Mine Road in the Town of Ramapo in Rockland County and the Town of [name]Tuxedo in Orange County, New York, identified as tax parcels ███████████████(collectively the "Property").

2.   Title.  At the closing, if one occurs, Seller will convey the Property by Bargain and Sale Deed with Covenant Against Grantor's Acts containing the covenant required by subdivision 5 of Section 13 of the New York State Lien Law.  Seller will convey to Purchaser fee simple title to the Property free and clear of encumbrances except those permitted in the Final Agreement, if any.

3.   Conditions Before Final Agreement.  Immediately upon the full execution of this Letter, Seller shall:

a.   Give to Purchaser full and complete copies of all studies and reports (excluding any appraisals or valuations) (collectively "reports") that Seller has in its possession relating to the Property including, but not limited to, soil and environmental reports (Phase I and/or Phase II or otherwise), title reports, surveys, traffic studies, utility studies, wetland reports, archeology studies, and any reports referenced in any draft or final Environmental Impact Statement or other document or statement submitted by Seller to any governmental agency or office relating to the Property (except such reports as are confi-

Letter of Intent
Lorterdan Properties
Page 2

dential or privileged and may not be released by the Seller to any party), and copies of any notices of violations of law. All such reports are provided by Seller without any representation or warranty, express or implied. (Purchaser will hold such reports provided by the Seller in confidence and only for its use in evaluating the Property); and

      b.     Allow Purchaser access to the Property so that Purchaser may begin its evaluation of the Property. Prior to the Purchaser or Purchaser's agents performing any invasive test on the Property, Purchaser will provide Seller with a policy of general liability insurance from a company reasonably acceptable to Seller in which the Seller (and any other party whose name is furnished to Purchaser) is an additional named insured, which said policy shall be in an amount not less than $1,000,000.00 single limit coverage and property damage in an amount of not less than $500,000. The Purchaser shall provide the Seller with certificates of Workers' Compensation insurance for any persons and entities for whom such coverage is required and that enter the Property (Seller understands that members of the religious order who work through Purchaser are not subject to Worker's Compensation and that there is no such coverage for them). In addition the Purchaser shall defend, hold the Seller harmless, and indemnify the Seller against any and all claims made against the Seller arising out of the activities of the Purchaser and Purchaser's agents, contractors, consultants or vendors on the Property which indemnification shall include indemnification for Seller's attorney's fees resulting from such claim or claims. The Purchaser will provide written notice to the Seller of its intention or the intention of any of its consultants to enter onto the Property at least one (1) business day prior to such entrance.

To the extent any studies, reports or documents referenced in subparagraph 4(a) above require governmental or other consent to provide the same to Purchaser, Seller shall cooperate (at no cost to Seller) with Purchaser in efforts to obtain such consent. Additionally, Seller agrees that Purchaser shall be able to use any such information provided by Seller in Purchaser's discussions with governmental agencies (federal, state, or local) and quasi-governmental officials and entities and with environmental and private interest groups.

    4.    <u>Exclusivity</u>. Seller hereby covenants and agrees that it shall not enter into any agreement to sell the Property to any party during the forty-five (45) days immediately following the date of Seller's signing this Letter ("Exclusive Period"). In the event that a Final Agreement is not concluded within the Exclusive Period, Seller shall thereafter be free to enter into any agreement it chooses with respect to the Property. This Paragraph ▓▓▓ is binding on the Seller whether or not a Final Agreement is ultimately reached between the parties. Nothing herein shall prevent Seller from negotiating for the sale of or discussing the Property with another potential purchaser, subject to the provisions of ▓▓▓▓▓▓▓▓▓▓▓▓▓ of this Letter.

    5.    <u>Letter is Non-Binding</u>. This Letter is an expression of intent only (and, when Seller indicates its approval of this Letter, may be called a Memorandum of Understanding), is not a binding agreement (except as provided in and as pertains exclusively to Paragraphs 4, 8, and 9), and is only an expression of the basic terms and conditions to be incorporated in a Final

Letter of Intent
Lorterdan Properties
Page 3

Agreement if one is entered into. This letter does not obligate either party to proceed to the completion of a Final Agreement or to negotiate the terms of a Final Agreement. Except as expressly set forth herein, neither party has any obligation to the other until both execute a Final Agreement, which must be satisfactory in form and substance to Purchaser and Seller and their respective counsel. The terms of this Letter shall be superseded by the terms and conditions of the Final Agreement. When the Final Agreement is signed or at the end of the Exclusive Period, whichever occurs first, this Letter shall have no legal effect and the terms hereof shall not be used as evidence in any claim or lawsuit between the Purchaser and Seller.

6.      Assignability.  The Purchaser acknowledges that this Letter is non-assignable. However, Purchaser may designate another legal entity used by Jehovah's Witnesses to be the Purchaser in the Final Agreement.

7.      Broker.  Purchaser represents to Seller that it has not retained or commissioned any broker, finder, real estate agent, or other similar person (collectively "Agent") in connection with the transaction contemplated by this. Seller represents to Purchaser that, except for David J. Gold, doing business as Country Homes & Estates LLC, Seller has not retained or commissioned any broker, finder, real estate agent, or other similar person (collectively "Agent") in connection with the transaction contemplated by this Letter and that Seller alone shall be responsible for any fees, commissions, or other compensation due to David J. Gold, doing business as Country Homes & Estates LLC or its/their brokers, employees, or agents, if the transaction contemplated by this Letter is ultimately concluded. Purchaser agrees that it will indemnify, defend, and hold the Seller free and harmless from the claims of any Agent for fees, commissions, or other compensation in connection with representing Purchaser regarding this Letter or the purchase of the Property. Seller agrees that it will indemnify, defend, and hold the Purchaser free and harmless from the claims of any Agent for fees, commissions, or other compensation in connection with representing Seller regarding this Letter or the purchase and sale of the Property.

8.      Confidentiality  Except as required by law, both parties will keep confidential the existence and terms of this Letter, except that each may disclose the same to their respective attorneys and consultants, so long as those also agree to this confidentiality provision, and except that Purchaser may disclose the existence and, if necessary, the terms (except financial terms) of this Letter to government and quasi-government officials and entities and environmental and private interest groups for the purpose of assessing their potential support or opposition to Purchaser's proposed use of the Property. Seller shall not disclose, allude to, or reveal the identity or name of Purchaser. Seller understands, consents, and agrees that Purchaser is permitted to freely discuss its proposed project and the Property with all governmental and quasi-governmental officials and entities that have regulatory involvement or jurisdiction over the Property or Purchaser's intended project and with environmental and private interest groups. This Paragraph 8 titled "Confidentiality" is binding on the Purchaser and Seller and their respective directors, officers, employees, and agents whether or not a Final Agreement is ultimately reached between the parties.

Letter of Intent
Lorterdan Properties
Page 4

9.    Authorized Signatory.  The Purchaser and the Seller represent to each other that the individual executing this Letter is duly authorized to do so by their respective entities.

10.    Time of the Essence.  Time of the essence is applicable to all time periods and dates in this Letter and in any Final Agreement.

**Purchase Alternative #1.**

1.    Purchase Price.  The Purchase Price is Twenty-eight Million and No/100 Dollars ($28,000,000.00) ("Purchase Price").  If a mutually acceptable Purchase and Sale Agreement between the Purchaser and Seller ("Final Agreement") is executed, it will require the Purchaser to deposit in escrow the sum of One Million Four Hundred Thousand Dollars ($1,400,000.00) as a "Deposit."  The Deposit will be credited to the Purchase Price at the closing of the transaction. Portions of the Deposit will become non-refundable as follows:

[Insert amounts and "milestones"]

Any interest on the Deposit will be the Purchaser's and may be applied to the Purchase Price.  The Deposit, or the remaining portions thereof, will be returned to the Purchaser if the transaction does not close, unless it does not close because of Purchaser's default under the Final Agreement.  The balance of the Purchase Price will be paid in full by certified or cashier's check or wire transfer.  The Final Agreement will not contain any financing contingency.

2.    Contingencies in Final Agreement.  Purchaser's obligation to purchase the Property shall be contingent upon the following, which will be included as contingencies in the Final Agreement:

a.    Purchaser being satisfied with the Property.  Purchaser shall have ninety (90) days from the date of the Final Agreement within which to perform its due diligence, including environmental assessments of the Property ("Due Diligence Period").  Before the expiration of the Due Diligence Period, the Purchaser, in its sole discretion, may terminate the Final Agreement at which time the Deposit and any interest thereon will be distributed to the Purchaser.

b.    Purchaser receiving all governmental and regulatory approvals, including final site plan approval, necessary for the construction of its proposed project on the Property ("Approvals").

— see comments

3.    Closing.  The closing of the transaction will take place within thirty (30) days of the date that Purchaser has received the Approvals.

Letter of Intent
Lorterdan Properties
Page 5

## Purchase Alternative #2.

1.   <u>Purchase Price</u>.  The Purchase Price is Twenty Million and No/100 Dollars ($20,000,000.00) ("Purchase Price").  If a mutually acceptable Purchase and Sale Agreement between the Purchaser and Seller ("Final Agreement") is executed, it will require the Purchaser to deposit in escrow the sum of Five Hundred Thousand Dollars ($500,000.00) as a "Deposit."  The Deposit will be credited to the Purchase Price at the closing of the transaction.  Any interest on the Deposit will be the Purchaser's and may be applied to the Purchase Price.  The balance of the Purchase Price will be paid in full by certified or cashier's check or wire transfer at the Closing.  If the transaction does not close, unless it does not close because of Purchaser's election to terminate within the Due Diligence Period (as defined below) or of Seller's default under the Final Agreement, the Deposit and any interest earned thereon will be distributed to the Seller as liquidated damages.  The Final Agreement will not contain any financing contingency.

2.   <u>Contingency in Final Agreement</u>.  Purchaser's obligation to purchase the Property shall be contingent upon Purchaser being satisfied with the Property.  Purchaser shall have ninety (90) days from the date of the Final Agreement within which to perform its due diligence, including environmental assessments of the Property ("Due Diligence Period").  Before the expiration of the Due Diligence Period, the Purchaser, in its sole discretion, may terminate the Final Agreement at which time the Deposit and any interest thereon will be distributed to the Purchaser.  This contingency will be included as a contingency in the Final Agreement.

3.   <u>Closing</u>.  The closing of the transaction will take place within one (1) year of the date that a mutually acceptable Purchase and Sale Agreement is executed.


If the foregoing terms meet with your approval, please so indicate by signing two (2) originals of this Letter in the place indicated below and return one original to the undersigned.  Thereafter, we will direct our legal counsel to prepare and forward to you a proposed Purchase and Sale Agreement.

<div align="center">Sincerely,</div>


<div align="center">Max Larson, President<br>Watchtower Bible and Tract Society<br>of New York, Inc.</div>

Alternative #__ is accepted this ____ day of September 2008 on behalf of Lorterdan Properties.

_____
Robert D. Jackson, [President/Manager/Managing Partner]

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# **Document 159**

## CONSENT OF MEMBERS

The undersigned, being a majority of the Members of LORTERDAN PROPERTIES AT RAMAPO I, LLC, a New Jersey limited liability company (the "Company"), by this document do adopt and consent to the following resolutions, effective immediately:

**RESOLVED**, that the Purchase And Sale Agreement dated as of January 23, 2009 (the "Contract") between the Company and WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. (the "Buyer") is hereby approved;

**RESOLVED**, that the Company is hereby authorized to sell and convey its real property located in Ramapo, Rockland County, New York and Tuxedo, Orange County, New York, as more particularly described in the Contract (the "Property"), to the Buyer in accordance with the terms and conditions of the Contract;

**RESOLVED**, that Robert Jackson, a Member of the Company, is hereby authorized to execute and deliver on behalf of the Company the Deed, all title affidavits, and all other documents and instruments that may be required on behalf of the Company in connection with the sale of the Property to the Buyer in accordance with the terms of the Contract; and

**RESOLVED**, that the Members hereby authorize the Company to take such action and to execute such documents as may be required for the Company to convey the Property to the Buyer and to execute and deliver such documents as may be required by the Contract, including without limitation, a Deed, title affidavit, and all closing documents.

**RESOLVED**, that this Consent may be signed in counterparts, which when taken together shall constitute an original fully integrated instrument.

### SIGNATURES ON FOLLOWING PAGE:

**IN WITNESS WHEREOF,** this Consent has been executed as of the 27th day of February, 2009.

ROBERT JACSKON, Member

FOUN-CHUNG FAN, M.D., Member

THE FAN FAMILY IRREVOCABLE TRUST, Member

By:_____
Wei Ling Fan, Trustee

Watchtower Bible and Tract
Society of New York, Inc.'s
Initial Disclosures—Exhibit A

# Document 160

WARRANTY DEED


LORTERDAN PROPRTIES AT RAMAPO I, LLC,
> a New Jersey limited liability company


TO


WATCHTOWER BIBLE AND TRACT SOCIETY OF
NEW YORK, INC.,
> a New York not-for profit corporation


ADDRESS:

148 Lorterdan Crossing
Section 38.14, Block 1, Lot 1
Ramapo, Rockland County

199 Table Rock Road
Section 838.14, Block 1, Lot 1.1
Ramapo, Rockland County

25 Table Rock Road
Section 838.14, Block 1, Lot 1.2
Ramapo, Rockland County

Route 72
Section 17, Block 1, Lot 19.21
Tuxedo, Orange County

WARRANTY DEED

THIS INDENTURE, made as of this 27th day of February, 2009

BETWEEN LORTERDAN PROPERTIES AT RAMAPO I, LLC, a New Jersey limited liability company, with a mailing address of 35 Virginia Avenue, Montclair, New Jersey 07042, party of the first part, and WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., a New York not-for-profit corporation, with a mailing address of 25 Columbia Heights, Brooklyn, New York 11201, party of the second part,

WITNESSETH, that the party of the first part, in consideration of ten dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, and the heirs or successors and assigns of the party of the second party forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Ramapo, County of Rockland and State of New York and the Town of Tuxedo, County of Orange and State of New York, as more particularly described on **Exhibit "A"** attached hereto and hereby made part hereof.

Being the same premises described in deed from CHFM Associates dated April 25, 2002 and recorded May 1, 2002 in Liber 5865 Page 32 (Orange County), and May 6, 2002 as Instrument No. 2002-00027857 (Rockland County).

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises;

TO HAVE AND TO HOLD the property herein granted unto the party of the second part, and the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants as follows:  that said party of the first part is seized of the said premises in fee simple, and has good right to convey the same, that the party of the second part shall quietly enjoy the said premises; that the said premises are free from encumbrances except for easements and restrictions of record as of the date hereof; that the party of the first part will execute or procure any further necessary assurance of the title to said premises; and that the said party of the first part will forever warrant the title to said premises.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:                    LORTERDAN PROPERTIES AT RAMAPO I., LLC
                                   a New Jersey limited liability company

                                   By: _____
                                          Robert Jackson, Member

## ACKNOWLEDGEMENT

STATE OF NEW YORK     )
                      ) SS.:
COUNTY OF KINGS       )


On the 27th day of February in the year 2009, before me, the undersigned, a Notary Public in and for said State, personally appeared Robert Jackson personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument and that such individual made such appearance before the undersigned in Kings County, New York.

Notary Public

RAMON M. TUCKER
Notary Public, State of New York
No. 01TU6109781
Qualified in Kings County
Commission Expires 6/7/2012

## Exhibit A

## Legal Description

**Schedule A Description**

Underwriter No. **413-RO-1302**
Title Number **LTNY-6505-RO-08**

Page    1

ALL that certain plot, piece or parcel of land, situate lying and being in the Town of Tuxedo, County of Orange, State of New York and partially in the Town of Ramapo, County of Rockland, State of New York bounded and described as follows:

BEGINNING at a point on the southerly side of Orange County Highway  No. 72 (a/k/a/ Sterling Mine Road), said point being at the northerly line of lands now or formerly of Sisters Servants of Mary Immaculate, Inc. (Tax Lot 17-1-17);

THENCE RUNNING along the southerly side of Orange County Highway No. 72, South 80 degrees 04 minutes 55 seconds East 280.08 feet to a point;

THENCE continuing along the same on a curve to the left having a radius of 922.40 feet for a distance of 110.59 feet to a point;

THENCE still along the southerly side of County Highway No. 72, South 81 degrees 39 minutes 29 seconds East 570.72 feet to a point, being the lands now or formerly of Barba (Tax 38.10-1-7);

THENCE along the lands now or formerly of CHFM Associates (Tax Map 38.10-1-8) also being the former Sterling and Iron Railroad, South 29 degrees 19 minutes 07 seconds East 83.37 feet to a point;

THENCE still along the lands now or formerly of CHFM Associates, South 81 degrees 39 minutes 29 seconds East 50.03 feet to a point on a curve;

THENCE still along the lands now or formerly of CHFM Associates, on a curve to the left having a radius of 988.40 feet a distance of 735.61 feet to a point;

THENCE continuing along the lands now or formerly of CHFM Associates, and along the lands now or formerly of Corley (Tax Map 38.10-1-5) North 55 degrees 42 minutes 00 seconds East 1424.34 feet to a point located on the southerly side of Sterling Mine Road (County Highway Route 72);

THENCE along the southerly side of Sterling Mine Road, North 74 degrees 46 minutes 04 seconds East 187.31 feet to a point;

THENCE still along the southerly line of Sterling Mine Road, North 59 degrees 39 minutes 47 seconds East 340.25 feet to the lands now or formerly of Consolidated Edison of New York (Tax Lot 38.10-1-4);

## Schedule A Description - continued

THENCE along the lands now or formerly of consolidated Edison of New York, South 01 degrees 20 minutes 11 seconds East 80.06 feet;

THENCE continuing along the same, South 34 degrees 52 minutes 43 seconds East 1306.11 feet to the lands now or formerly of ABF Real Estate Co., Inc. (Tax Lot 38.15-1-1-);

THENCE along the westerly side of lands now or formerly of ABF Real Estate Co., Inc. South 41 degrees 08 minutes 28 seconds West 1733.24 feet to a point;

THENCE continuing the same, South 13 degrees 53 minutes 31 seconds West 211.75 feet to a point;

THENCE along the southwesterly line of lands now or formerly of ABF Real Estate Co. Inc. South 44 degrees 58 minutes 18 seconds East 1236.68 feet to the lands now or formerly of Ramapo Land Company, Inc. (Tax Map 46.07-1-8);

THENCE along the northerly side of lands now or formerly of Ramapo Land Company, Inc., South 57 degrees 49 minutes 00 seconds West 1290.64 feet to a point;

THENCE continuing along the lands now or formerly of Ramapo Land Company, Inc. (Tax map 46.12-2-3) North 46 degrees 48 minutes 43 seconds West 1306.74 feet to a point;

THENCE still along the lands of Ramapo Land Company, Inc., (Tax Map 46.12-2-3) South 41 degrees 55 minutes 24 seconds West 843.62 feet to a point;

THENCE along the lands now or formerly of George H. Boynton and Hazard E. Reeves (Tax Map 46.01-1-1) and lands now or formerly of the Sisters Servants of Mary Immaculate, Inc. (Tax Map. 38.17-1-2) North 60 degrees 58 minutes 58 seconds West 2015.86 feet to a point;

THENCE still along the lands now or formerly of the Sisters Servants of Mary Immaculate, Inc. (Tax Map 38.13-1-1) North 54 degrees 18 minutes 24 seconds East 662.43 feet to a point;

THENCE continuing along the same North 01 degrees 53 minutes 25 seconds East 762.38 feet to a point on a curve;

THENCE continuing along the lands now or formerly of Sisters Servants of Mary

## Schedule A Description - continued

Immaculate, Inc. (Tax Map 38.13-1-1) and Tax Map Town of Tuxedo, County of Orange, Section 17-1-17) on a curve to the right having a radius of 155.00 feet for a distance of 285.14 feet to a point;

THENCE continuing along the lands now or formerly of Sisters Servants of Mary Immaculate, Inc., (Tax Map Section 17-1-1), North 20 degrees 49 minutes 15 seconds East 652.47 feet to a point on a curve on the southerly side of the former Sterling and Iron Railroad;

THENCE on a curve to the right having a radius of 988.40 feet for a distance of 130.58 feet to the southerly side of County Highway Route 72, being the point or place of BEGINNING.

# Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 161

**David J. Gold**
**Licensed Real Estate Broker**
**2 Windward Lane**
**Wesley Hills, New York 10952**

# INVOICE

February 27, 2009

## Brokerage Commission

**Property:**

*148 Lorterdan Crossing*

~~158 Sterling Mine Road~~, ~~143 Eagle Valley Road~~, 199 Table Rock Road, and 25 Table Rock Road, Town of Ramapo, Rockland County, New York (tax parcel numbers ~~838.14-1~~ 38.14-1-1, 838.14-1-1.1, and 838.14-1-1.2), and on Route 72 in the Town of Tuxedo, Orange County, New York (tax parcel number 17-1-19.21), consisting of approximately 248 acres.

**Purchaser:**        Watchtower Bible and Tract Society Of New York, Inc

**Seller:**        Lorterdan Properties At Ramapoo I LLC

**Purchase Price:**    **$11,500,000 (first Closing)**

*Additional commission due as stipulated in Addendum to Brokerage Agreement dated January 23, 2009. Commission due upon payment by Watchtower Bible and Tract Society of New York of consulting fee to Lorterdan Properties at Ramapo I LLC.*

Wire Instructions:

JP Morgan Chase Bank, NA,

Routing Number:  021000021
Account Number: 6802790919
David J.. Gold
4 Windward Lane
Wesley Hills, NY 10952
TEL: 845-354-2060

| | |
|---|---|
| Total | $225,000.00 |

Watchtower Bible and Tract Society of New York, Inc.'s Initial Disclosures—Exhibit A

# Document 162

**Moake, Richard**

| | |
|---|---|
| **From:** | Rice, Daniel |
| **Sent:** | Friday, December 12, 2008 4:33 PM |
| **To:** | Moake, Richard; Brumley, Philip |
| **Cc:** | Schilling, Lon; Pollock, Robert Jr.; Jeff Baker (jeff.baker@skci.net); Van Tassel, Kris |
| **Subject:** | Terms Sheet - Sterling Mine Road Property in Town of Ramapo |
| **Attachments:** | Terms Sheet Draft.doc |

Dear Philip and Rick,

Attached is a draft terms sheet for the Lorterdan Property on Sterling Mine Road in the Town of Ramapo in Rockland County. It would be appreciated if you would modify this in such a way so that it can be presented to Mr. Jackson. (There are a few more points to present to him before we have concluded the negotiations and we would like to have this Terms Sheet to use as a basis for the discussion.) Since I will be away unitl December 22nd, this can be forward to the Property Search Group in care of Bob Pollock who will continue the discussions with Robert Jackson and David Gold in my absence.

Thank you.

Dan Rice

12/15/2008

## Proposed Terms of Purchase
## 155 Sterling Mine Road

PROPERTY: ..................... 248± acres of unimproved land at 155 Sterling Mine Road in the Town of Ramapo, Rockland County, New York, and the Town of Tuxedo, Orange County, New York

PURCHASE PRICE:............ $21,000,000 – Twenty One Million Dollars (US)

DEPOSIT:........................... No Deposit Required

TERMS: ............................ Watchtower is making an "All Cash" offer to purchase the fee simple interest of the Property in "As Is" condition

Watchtower agrees to purchase the Property for $11,500,000 (Purchase Price) and enter into a separate agreement to pay Seller an additional $9,500,000 as a bonus at the end of 2 years after the closing date if Watchtower determines that it will proceed with its development

- Watchtower can pay the $9,500,000 bonus at any time before to the end of the 2-year period if sufficient approvals have been obtained from the municipality

If for any reason before the end of 2 years from the closing date Watchtower determines that it will not proceed with its development of the Property, Seller is required to buy-back the Property for the full original Purchase Price of $11,500,000

- Seller is not required to buy-back the Property before the 2-year period has ended

- Watchtower will provide notice giving Seller six (6) months to secure financing for the buy-back

Watchtower may give notice to Seller at any time, but if notice is given before the 18th month, Seller is not required to buy-back the Property until 2 years after the closing (plus any extensions)

- Watchtower will grant up to 6 one-month extensions to Seller to secure financing at a cost of *[Amount to be determined: Perhaps the Taxes and Lost interest on the Buy-Back Price]* (The extension payments are not applicable to buy-back price)

- If for any reason Seller chooses not to buy-back, or cannot buy-back the Property within the Buy-Back Period, or any of its paid extensions, Seller forfeits the $9,500,000 bonus and Watchtower retains the Property with no further obligation to Seller

Revised: December 12, 2008

Proposed Term of Purchase
155 Sterling Mine Road
Page 2

| | |
|---|---|
| INSPECTION PERIOD: ....... | Thirty (30) days following the execution of a Purchase and Sales Agreement |
| | Watchtower may freely discuss its proposed project and the Property with political, regulatory, and environmental groups |
| CLOSING: .......................... | Thirty (30) days following the execution of a Purchase and Sale Agreement |
| CONDITIONS TO CLOSING: | Seller will transfer and/or assign to Watchtower all of the sewer and water capacity, that Seller has the right to transfer and/or assign from any municipal and/or private utility for the Property |
| | Seller will transfer and/or assign all other approvals and the results of any due diligence or engineering studies for the property |
| BROKER: ........................... | David Gold of Strategic Capital Advisors is the sole broker involved in this transaction |
| | Seller is responsible to pay the Broker's commission |
| PURCHASER: .................... | Watchtower Bible and Tract Society of New York, Inc. M. H. Larson, President |
| SELLER: ........................... | Lorterdan Properties at Ramapo I, LLC Robert Jackson, Partner |

Revised: December 15, 2008